UNITED STATES of America, Appellee,

v.

Cleo BURGARD, Appellant.

No. 76–1262.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1976.

Decided Feb. 18, 1977.

Rehearing and Rehearing En Banc
Denied March 23, 1977.

James R. Wyrsch, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C. Hurn, U. S. Atty., Mark E. Gardner, Law Student, on the brief.

Before GIBSON, Chief Judge, and HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Cleo Burgard was convicted on two counts of firearms violations. On appeal, he raises numerous claims of error. We affirm the conviction.

Burgard was charged in two counts of the indictment. In Count I, he was charged with conspiring with Garry Johnson to violate 26 U.S.C. §§ 5812, 5861(d) and 5861(e) by possessing unregistered firearms and transferring firearms without having filed written application forms. In Count IV, he was charged with violating §§ 5812 and 5861(e) by transferring two silencers without having filed a written application form.

The government's evidence showed that, between February 24 and May 6, 1975, Garry Johnson transferred a number of firearms to agents of the Bureau of Alcohol, Tobacco, and Firearms. The first transfer occurred on February 24, when Johnson transferred a machine gun and a pistol to ATF Agents Robert Manske and James Kelly, and one Roger Kennedy. On this occasion, Johnson told Manske that he obtained all of his firearms from "a friend down south." Johnson later said that he obtained the machine gun sold on this date from his "Uncle Cleo." A second transfer, involving several firearms, occurred on April 29, 1975.

On April 30, Johnson told Agent Kelly that his Uncle Cleo had two silencers and that he would obtain the silencers from Cleo in the near future. A meeting between Johnson and Kelly was arranged for May 6. On May 6, agents observing Johnson saw appellant hand two packages to him. They immediately arrested both men and found that each package contained a silencer.

The agents then obtained a warrant for the search of appellant's home in Cass County, Missouri, from a Missouri circuit court judge. The warrant did not designate a federal judge or magistrate to whom return was to be made, and the return was eventually made to the state judge who issued the warrant. The search was begun before 10:00 p. m. on the night of May 6, and continued until 11:05 that night. The search yielded, *inter alia,* a machine gun, parts to various guns, and various papers, including an ATF pamphlet dealing with firearms, a pamphlet showing gun ordinances, a firearms record book, a firearms transaction book, and other firearm transaction records. These materials were admitted at trial. The government also produced expert testimony that the silencers, when attached to pistols, substantially reduced their noise level.

The case was tried to a jury which found appellant guilty of the two counts with which he was charged. This appeal followed.

## I. The Search

Appellant contends that evidence seized in the search of his residence should have been suppressed because (1) the warrant was issued without probable cause and was overbroad; (2) the warrant was defective in that it failed to provide for return to a federal magistrate; and (3) the search was not completed within the hours provided by rule for the conduct of a search.

(1) The affidavit furnished by Agent Robert Harper clearly provided a factual basis upon which the magistrate could find probable cause to believe that a firearm offense had taken place and that evidence of the offense could be found at appellant's residence. It reported that there had been recent instances of illegal firearms transactions, that appellant had been identified by Johnson as the source of the firearms, that he had been observed on the morning of May 6 placing a white box in his car at his residence, that he had transferred the silencers to Johnson that morning, and that a white box was observed on the seat of his car at the time of the transfer. Affidavits are to be interpreted in a "commonsense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We think the magistrate was amply justified in concluding that other firearms were likely to be on the premises of appellant's residence.

Moreover, we have no difficulty in upholding the scope of the warrant. While appellant was observed taking a package from his automobile at a place near the garage and was seen taking it into an ad-

joining workshop it would be unrealistic to confine the search to so narrow a part of the premises. The agents had shown probable cause to believe appellant was in possession of a quantity of guns, and it could be reasonably inferred that such weapons would be kept inside his house rather than in an outside garage. *See United States v. Samson,* 533 F.2d 721, 723 (1st Cir. 1976); *United States v. Rahn,* 511 F.2d 290, 293 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Mulligan,* 488 F.2d 732, 736 (9th Cir. 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974).[1]

■ (2) Whether the attack is upon the failure of the warrant to designate a federal magistrate to whom the return should be made or upon the failure of the agents to make the return to such a magistrate, the contention is without merit. The agents, unable to locate a federal magistrate to authorize the search, sought authorization from a state circuit judge, as permitted by Fed.R.Crim.P. 41(a).[2] Through a misunderstanding of proper procedure, they made the return to the same state judicial officer. While the procedure followed by the agents was contrary to Rule 41, suppression of the fruits of the search is not required absent a showing of (1) "prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed," or (2) "evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Burke,* 517 F.2d 377, 386–87 (2d Cir. 1975). Our examination of the search convinces us that the agents' failure to make return of this warrant in the manner prescribed by Rule 41 resulted in no additional abrasiveness to appellant or advantage to the government. The error in procedure was inadvertent and the harsh application of the therapeutic exclusionary rule in these circumstances would be entirely inappropriate.

■ (3) Finally, we see no merit in suppressing the fruits of the search simply because the search was still in progress at 10:00 p. m. and was not completed before 11:00 p. m. The search commenced well before 10:00, within the requirements of Fed.R.Crim.P. 41.[3] Searches which began during daytime and continued into the night have been held not to violate the rule. *United States v. Woodring,* 444 F.2d 749, 751 (9th Cir. 1971); *United States v. Joseph,* 278 F.2d 504 (3d Cir.), *cert. denied,* 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960). The 1972 amendment to the rule[4] did not alter the practical approach to be applied. No prejudice resulting from failure to complete the search by 10:00 p. m. has been demonstrated.

## II. *Appellant's Statements*

Appellant contends that statements made by him following his arrest were improperly admitted in evidence. The grounds for objection vary and will be discussed in relation to each statement.

■ The first statement occurred following appellant's arrest as he was being placed in a patrol car. Without any prior interrogation, appellant asked, "What is this all about? Is it about those things I gave him?" This was a voluntary, spontaneous inquiry and thus must not be exclud-

---

1. The affidavit referred to a confidential source who had told the agent that he had seen appellant with a silencer, had heard machine gun fire near appellant's residence, and that appellant had told him of appellant's possession of M–2 carbine machine guns. The affidavits failed to demonstrate the reliability of the informant or facts from which such reliability might be inferred. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We have excluded his statements from our assessment of probable cause.

2. (a) Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located, upon request of a federal law enforcement officer or an attorney for the government.

3. Fed.R.Crim.P. 41(c) requires that a warrant be served in daytime; Fed.R.Crim.P. 41(h), as amended in 1972, defines daytime as the hours from 6:00 a. m. to 10:00 p. m.

4. *See* note 3, *supra.*

ed, as appellant contends, because he had not yet received his *Miranda* warnings. *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Martin,* 511 F.2d 148, 150 (8th Cir. 1975); *United States v. Cook,* 530 F.2d 145, 153 (7th Cir. 1976).[5]

◼ About one hour after his arrest, and after receipt of *Miranda* warnings, appellant submitted to questioning, during which he stated, "I have never sold other silencers." Appellant contends that this statement was not voluntary because it was prompted by a coercive atmosphere in which he was denied communication with his wife, was given misleading information, and was intimidated by suggestions that as a law officer his safety would be in jeopardy if he were in jail. The District Court[6] held that this interrogation was not coercive, and we agree. There was no evidence that a confession was made a condition of appellant's opportunity to call his wife, compare *Haynes v. Washington,* 373 U.S. 503, 514, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), and he was not denied access to counsel; there was no evidence of a will overborne. *See Coney v. Wyrick,* 532 F.2d 94, 97–98 (8th Cir. 1976). Likewise, a police officer's statement to appellant that he talked too much over the phone was hardly a representation, as appellant contends, that he had been the subject of electronic surveillance. Even assuming some deception in the agent's statement, it was not one the "reasonable effect" of which "could have been to affect the voluntariness of" appellant's statement. *United States v. Moreno-Flores,* 461 F.2d 1001, 1002 (9th Cir. 1972). Finally, the remark about appellant's safety in jail was not one the effect of which could reasonably be said to have rendered the statement involuntary. The findings of the District Court are well supported by the evidence.

◼ A third statement occurred on May 7, 1976, shortly before appellant was to be taken to a federal magistrate as required by Fed.R.Crim.P. 5(a). Appellant volunteered this statement: "Well, those silencers hardly cut down the noise at all and I don't really see what was wrong with them." Approximately twenty-four hours had elapsed since his arrest, and appellant now contends that this statement should have been suppressed because it came following an unreasonable delay in presenting him to a magistrate. Fed.R.Crim.P. 5(a) provides in part:

> (a) In General. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

*Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), requires exclusion of statements obtained in violation of Rule 5(a). Appellant argues that in the absence of the magistrate, who was out of the city on the day of appellant's arrest, he should have been taken to a state or local judicial officer. Appellant has failed to demonstrate, however, that the short period of time during which the federal magistrate was out of the city made him "not reasonably available." The twenty-four hour period, moreover, is well within time limits upheld as reasonable by other courts. *See, e. g., United States v. Mendoza,* 473 F.2d 697, 702 (5th Cir. 1973) (two-day delay); *Davis v. United States,* 416 F.2d 960 (10th Cir. 1969), *cert. denied,* 397 U.S. 969, 90 S.Ct. 1009, 25 L.Ed.2d 262 (1970) (thirty-seven hours); *Nez v. United States,* 365 F.2d 286 (10th Cir. 1966) (overnight); *United States v. Collins,* 349 F.2d 296, 298 (6th Cir. 1965) (three days). There is no evidence that the delay was used for the pur-

---

5. It should also be noted that Agent Wurm stopped appellant from making further statements and read his *Miranda* warnings to him.

6. The Honorable William H. Becker, Chief Judge, United States District Court for the Western District of Missouri.

pose of extending the interrogation period. *Cf. United States v. Middleton,* 344 F.2d 78, 82 (2d Cir. 1965). Appellant has failed to carry his burden of proof. *See Miller v. United States,* 396 F.2d 492, 496 (8th Cir. 1968), *cert. denied,* 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969).

### III. *Other Contentions*

Appellant has raised a substantial number of additional issues which do not merit extensive discussion. Upon a full review of the record, we are satisfied that these claims are without merit.

### A.

Two jurors were excused for cause by the District Judge. In the circumstances of the case, this action was well within the District Court's broad discretion. *United States v. Brown,* 540 F.2d 364, 379 (8th Cir. 1976); *United States v. Freeman,* 514 F.2d 171, 174 (8th Cir. 1975). There was no showing whatever that the jury as finally impanelled was not impartial. *See United States v. Marshall,* 153 U.S.App.D.C. 83, 471 F.2d 1051, 1053 (1972); *United States v. Zambito,* 315 F.2d 266, 269 (4th Cir.), *cert. denied,* 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963); *Simpson v. United States,* 184 F. 817, 819 (8th Cir. 1911).

### B.

■ Appellant contends that the indictment was insufficient for failure to allege that the charged acts were done "unlawfully." The District Court properly rejected this argument. The indictment does charge that the acts were done "in violation of" certain named sections of the United States Code. *See United States v. Miranda,* 494 F.2d 783, 785 (5th Cir.), *cert. denied,* 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974). Moreover, it appears from the face of the indictment that the weapons involved, M–2's, M–2 kits and silencers, are not antiques, and so could not have been possessed lawfully as appellant hypothesizes.

### C.

■ : Appellant now complains of the admission of certain evidence of other crimes. Since this evidence was not objected to below, its admission is reviewable only under the plain error doctrine. Fed.R. Crim.P. 52(b). The evidence complained of was developed either during cross-examination of government witnesses or in cross-examination by the government of defense character witnesses. In the first situation, the evidence was admissible as responsive to a defense question. *United States v. Cohen,* 481 F.2d 840, 844 (8th Cir. 1973); *Wilkerson v. United States,* 342 F.2d 807, 813 (8th Cir. 1965). In the second situation, the evidence was admissible under Fed.R. Evid. 405(a) as cross-examination of a character witness about specific acts of misconduct. *See Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). We find no plain error.

### D.

■ Appellant complains that the evidence was insufficient to show that the two silencers were "firearms" within 26 U.S.C. § 5845(a), because one was damaged and both did not substantially reduce noise levels. There was evidence that the damaged silencer could be readily affixed to the barrel of a gun after minimal machine shop work, and that the silencers reduced the sound of firing of .22 caliber pistols by 12.5 and 18 decibels respectively. In an in-court demonstration, both reduced noise by 20 decibels. This evidence clearly established the silencers as readily operable firearms within the meaning of 26 U.S.C. § 5845. *See United States v. Schrum,* 346 F.Supp. 537, 540 (E.D.Va.1972) (silencers reducing noise levels by 6 and 10 decibels held to be "firearms").

### E.

■ Appellant complains of the admission of certain acts and declarations of his codefendant, Garry Johnson. The declarations were those identifying the source of the weapons as Johnson's "friend down south," and "Uncle Cleo." These statements were made during a series of weapon

deals between Johnson and the agents, and were in furtherance of the deals. There was ample independent evidence that both Johnson and Burgard were coconspirators. The statements were properly admitted. Fed.R.Evid. 801(d)(2)(E); *United States v. Rich,* 518 F.2d 980, 984 (8th Cir. 1975); *United States v. Hutchinson,* 488 F.2d 484, 491 (8th Cir. 1973), *cert. denied, Ennis v. United States,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1973). The acts of Johnson complained of by appellant were plainly in furtherance of the conspiracy, and so were admissible against appellant under the rule of *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

F.

Finally, appellant attacks the sufficiency of the charge to the jury. The District Court refused a defense instruction that if one of several persons merely pretends to agree, he has not entered into a conspiracy. Appellant offered no evidence showing that his participation was feigned; he was not entitled to this instruction. The court's instructions, taken as a whole, required a finding that appellant had willfully become a member of the conspiracy. Other complaints concerning the court's instructions are equally without merit.

The judgment of conviction is affirmed.