# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2421

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  Eastern District of Arkansas. |
| Robert Childs Hartje, | * |
| | * |
| Appellant. | * |

_____

Submitted:  February 13, 2001

Filed:  May 31, 2001

_____

Before WOLLMAN, Chief Judge, BOWMAN, and MORRIS SHEPPARD ARNOLD,
  Circuit Judges.

_____

WOLLMAN, Chief Judge.

Robert Childs Hartje appeals from his conviction and sentence entered on various methamphetamine-related charges.  We affirm the conviction, but vacate the sentence in part and remand for resentencing.

# I.

On October 29, 1999, Hartje was convicted of two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3), and one count of conspiracy to manufacture, distribute, and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. The district court sentenced Hartje to 210 months of imprisonment on all counts, to run concurrently, and three years of supervised release.

Much of the incriminating evidence presented at trial was the result of two searches of Hartje's residence in Conway, Arkansas, coupled with the items located in the trunk of the vehicle Hartje was driving when he was arrested in February of 1999. The first search of Hartje's residence and property, where Hartje resided with his son and many other individuals, occurred on August 4, 1998. The search was conducted pursuant to a warrant based on an affidavit by Investigator Danny Moody of the Conway Police Department that described several methamphetamine transactions, including controlled buys, that had been made by and for confidential informants at the residence earlier in the summer. Items seized included methamphetamine, digital scales, syringes, bongs, and several firearms. The second search was conducted on October 15 and 16, 1998, also pursuant to a warrant. This second warrant was based on the affidavit of Investigator Travis Thorn of the Conway Police Department outlining Hartje's recent purchase of materials that could be used for the manufacture of methamphetamine and a report from a previously proven reliable informant of a methamphetamine purchase at the residence. Investigator Thorn's affidavit also recounted the results of the prior search. Items seized from the residence during the second search included methamphetamine, plastic baggies, scales, pseudoephedrine, and a list of ingredients used in the manufacture of methamphetamine.

In late January of 1999, law enforcement officers received information that Hartje was using hotel rooms to manufacture methamphetamine. On February 9, 1999, they were notified that Hartje had checked into a hotel. Investigator Thorn and Investigator William Tapley surveilled the hotel and observed Hartje and a female companion load several boxes into the trunk of his car. Shortly thereafter, two men got out of a blue car, went inside the hotel, and returned to the parking lot with Hartje, the female, and another male. After the group conversed for a time in the parking lot, the two men from the blue car returned to it and departed. Hartje and the other two individuals then left shortly thereafter in Hartje's vehicle. While Investigators Thorn and Tapley tailed Hartje's vehicle in an unmarked car, another law enforcement team followed and subsequently stopped the blue car. A search of the blue car revealed methamphetamine, a large quantity of cash, and a weapon. By this time, yet another law enforcement officer had stopped Hartje's vehicle for speeding, and the male passenger had falsely identified himself to the officer. When Investigators Thorn and Tapley, who had stopped their vehicle near Hartje's vehicle, learned by radio of the discovery in the blue car, they informed the officer who had stopped Hartje of the circumstances. Hartje and his passengers were immediately arrested on methamphetamine charges. A search of Hartje's vehicle revealed "[b]asically just almost everything you would need for a [methamphetamine] lab" in the trunk.

## II.

The district court held two hearings on Hartje's motions to suppress and concluded that there was probable cause for the issuance of the warrants for the residence and that the search of the vehicle's trunk was conducted pursuant to a standard police department policy and thus was a valid inventory search.

Hartje first argues that the October 15, 1998, search warrant for his residence was not based on probable cause because the facts outlined in the supporting affidavit

did not have the required nexus with his residence. He then challenges the August 1998 search warrant as based on stale information.

"We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Nation, 243 F.3d 467, 469 (8th Cir. 2001) (citation omitted). Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id. We will uphold a judicial determination of probable cause if we believe that there was a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. at 470-71. "We emphasize that probable cause is to be determined under a totality-of-the-circumstances approach." United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996).

We agree with the district court that the information provided in Investigator Thorn's October affidavit would give a reasonable person reason to suspect that items relating to the manufacture and distribution of methamphetamine would be found at Hartje's residence. The affidavit outlined the facts of the results of the prior search of the residence, that Hartje had been seen purchasing items used in the manufacture of methamphetamine, and that a reliable informant had reported the recent distribution of methamphetamine at Hartje's residence. It is true that the affidavit did not specify whether Hartje took his purchases to his residence, but given the other facts in the affidavit and viewing Hartje's purchases in the light of the circumstances of this case, we conclude that the warrant for the October search was supported by probable cause.

We also agree with the district court that the information in Investigator Moody's August 3, 1998, affidavit supporting the August warrant was not stale. Four of the five reported methamphetamine transactions in the affidavit occurred in June of 1998 and the fifth on July 31, 1998. The substance obtained on June 30 field-tested for methamphetamine, but the substance from the July 31 transaction did not.

Notwithstanding the negative field test, the July 31 substance was a precursor of methamphetamine and was sold as methamphetamine, thus rendering it relevant to the ongoing methamphetamine production at the residence. Additionally, we also conclude that the time lapse from the late June purchase to the late July purchase did not render the information stale in light of the ongoing nature of the crimes. See LaMorie, 100 F.3d at 554 (time factors relevant but must be viewed in the context of a particular case and nature of the crime charged); United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998). In the totality of the circumstances, the facts outlined in the supporting affidavit were sufficient to constitute probable cause to issue the August warrant.

We turn to Hartje's argument concerning the suppression of the evidence found in the trunk of his vehicle. He argues that his arrest was not supported by probable cause and that even if it was, the search of the trunk was conducted to search for incriminating evidence rather than to inventory the contents. The district court found that there was probable cause to arrest Hartje and the other occupants of his vehicle. The court then concluded that although the officers were likely hoping to find incriminating evidence, their inventory of the contents of the trunk was conducted pursuant to a standard police department policy that requires such an inventory before a vehicle is towed.

Probable cause to conduct a warrantless arrest exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested. Beck v. Ohio, 379 U.S. 89, 91 (1964). By February of 1999, officers had already searched Hartje's residence twice and found methamphetamine, weapons, and items related to the manufacture and distribution of methamphetamine. They had also received a tip that Hartje had begun to manufacture methamphetamine in hotel rooms. Under surveillance, Hartje and two companions met with two men at a hotel who were stopped in their vehicle shortly thereafter and found to have methamphetamine, cash,

and a weapon. Meanwhile, one of Hartje's passengers lied to a police officer about his identity during a routine traffic stop. Accordingly, we agree with the district court's determination that the police had probable cause to arrest Hartje on methamphetamine charges.

When taking custody of property such as Hartje's vehicle, law enforcement officers may conduct a warrantless search and inventory in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger. Colorado v. Bertine, 479 U.S. 367, 372 (1987). The central inquiry in determining whether such an inventory search is reasonable is a consideration of the totality of the circumstances. United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993). "[I]nventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." Id. Law enforcement officers, however, "may not raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence. Id. at 1175.

Hartje and both of his passengers were taken into custody while Hartje's vehicle was parked on the side of a road paralleling a highway. Investigator Tapley testified during the suppression hearing that the "policy of Conway Police Department is that anytime a vehicle is towed, that an inventory, a complete inventory be done on that vehicle before the wrecker service takes the vehicle," and that "during training, this was what we were shown to do and how to do it." We do not believe, as Hartje suggests, that the fact that the officers failed to outline more of the specifics of the towing policy renders the district court's finding clearly erroneous, or that the fact that the officers' motives may have been mixed invalidates the search for the purposes of the Fourth Amendment. "[W]hen the police conduct inventory searches according to . . . standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." Id. at 1176. There is no indication in the present

-6-

case that the search was a subterfuge for a "general rummaging" for evidence. See id. at 1175 (citation omitted). Thus, the court did not clearly err in its finding that Hartje's vehicle was inventoried pursuant to standard Conway Police Department procedure.

**III.**

Hartje contends that his sentence violates the dictates of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (any fact other than that of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and found beyond a reasonable doubt), because his sentencing range under the sentencing guidelines, determined partially through a four-level increase in the offense level pursuant to U.S.S.G. § 3B1.1(a) for being a leader, was 210 to 262 months of imprisonment, a range which he contends exposed him to punishment exceeding the statutory maximum of 240 months to which he could be sentenced under 21 U.S.C. § 841(b)(1)(C) for an offense in which no drug quantity is specified in the indictment or jury verdict. See 21 U.S.C. § 841(b)(1)(C); United States v. Bradford, No. 99-3975, 2001 U.S. App. LEXIS 6435 at *8 (8th Cir. April 13, 2001). Hartje was sentenced only to 210 months, however. So long as the imposed sentence does not exceed the statutory maximum allowable for the crime, Apprendi is not implicated. United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000); United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000). Accordingly, this claim fails.

Hartje argues that the court did not believe that it had the authority to depart downward under sentencing guideline § 5K2.13 for Hartje's diminished mental capacity during the time he committed the crimes.[1] We review the district court's

---

[1]"Diminished Capacity (Policy Statement)
A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13 (2000).

application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001).

Hartje's counsel raised the possibility of a departure under § 5K2.13 and moved for a full psychiatric evaluation prior to sentencing. The court granted the motion and ordered an examination, which resulted in a report indicating that Hartje suffers from substance abuse and an adjustment disorder with depressed mood but that his mental capacity is not significantly diminished. During the sentencing hearing, the court briefly discussed Hartje's statement that he had been diagnosed as bipolar manic depressive, which was not included in the pre-sentence report, and, immediately before declaring judgment, mentioned that it found no basis on which to depart from the guidelines range. In light of the district court's granting of the motion for an examination and its discussion of Hartje's possible mental illness, we conclude that the court was aware of its ability to depart downward if it determined that Hartje's situation merited such relief. The court's decision not to depart is virtually unreviewable on appeal. See United States v. Johnson, 169 F.3d 569, 573 (8th Cir. 1999); United States v. Ruklick, 919 F.2d 95, 97 (8th Cir. 1990). Accordingly, this claim fails. Hartje's additional claim on this issue regarding a conflict of interest is without merit.

Finally, Hartje contends that the district court erroneously sentenced him to 210 months of imprisonment on Count IV, the charge of possession of a firearm by a user of a controlled substance in violation of 21 U.S.C. § 922(g)(3), for which the statutory maximum is ten years. Although the district court noted the ten-year maximum on Count IV during the sentencing hearing, the final judgment it entered imposed a sentence of 210 months on all counts. Accordingly, the government agrees with Hartje that the sentence on Count IV must be vacated.

The conviction is affirmed, as are the sentences imposed on Counts I, II, III, and V. The sentence imposed on Count IV is vacated, and the case is remanded to the

district court for resentencing within the confines of the statutory maximum on that count.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.