**UNITED STATES of America,**
**Plaintiff,**

v.

**Ricky Lee LaFOUNTAIN, Defendant.**

**No.  C4–02–103.**

United States District Court,
D. North Dakota,
Northwestern Division.

March 12, 2003.

Rick L. Volk, Bismarck, ND, for Plaintiff.

James G. Wolff, Mohall, ND, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Suppress Evidence and Brief filed on February 4, 2003. The Government filed a Memorandum in Opposition to Motion to Suppress on February 13, 2003. An evidentiary hearing was held in Minot, North Dakota, on March 6, 2003. For the reasons set forth below, the Defendants' Motion to Suppress Evidence is **DENIED.**

## I. *BACKGROUND OF THE CASE*

On or about November 17, 2002, at approximately 11:30 p.m., New Town Police Officer Nathan McLeish stopped a black Chevrolet pickup truck for driving with a headlight out. Edward Forschen, a co-defendant, was the driver of the truck and defendant Ricky Lee LaFountain was a passenger. The vehicle was stopped in downtown New Town near the offices of the Bureau of Indian Affairs. A drivers license check revealed that Forschen had a suspended driver's license and he was arrested. Another officer (Casey Hall) who arrived on the scene transported LaFountain to the Four Bears Casino and Lodge to obtain a room for the night as LaFountain also had no valid driver's license.

Officer McLeish returned to the vehicle to secure it. When McLeish opened the driver's door to the pickup, he observed an item he described as a radiator tester (glass tube) with a white powder substance on it. The glass tube was melted on one end and Office McLeish testified that he believed it was drug paraphernalia. The glass tube was in plain view and located in the cubby hole of the driver's door panel. Officer McLeish secured the vehicle and transported Forschen to the New Town Police Department where he was arrested for driving under suspension.

McLeish requested that BIA Police Officer Jerry Hoeger assist him in transporting the pickup truck to the police department. McLeish, Hoeger, and BIA Police Officer Jay Standish then returned to the vehicle. There, McLeish showed Hoeger the glass tube located in the door panel which Hoeger recognized as a crack pipe. The crack pipe was secured in a paper bag. BIA Officer Hoeger then got into the vehicle to drive it away and he observed other items inside the vehicle which he recognized as drug paraphernalia. Specifically, Hoeger testified that he used his flashlight to look around inside the vehicle and he observed a cooler partially open in the front of the pickup; and tinfoil and plastic baggies on the floor. Hoeger said that these items led him to believe there were drugs and/or drug paraphernalia in the truck. Hoeger told Officer McLeish that "things did not look right." Hoeger then decided to obtain a search warrant.

BIA Officer Hoeger proceeded to obtain a search warrant from Judge El Marie Conklin, a tribal court judge on the Fort Berthold Indian Reservation. The application for the search warrant and the warrant itself were on forms for a federal warrant. Officer Hoeger testified that he had the search warrant forms loaded in his laptop computer and that he had obtained the federal forms at a law enforcement seminar he had recently attended in New Mexico.

The pickup truck was driven by BIA Officer Hoeger to the New Town Police Department where the BIA officers began their search. Officer McLeish kept an inventory of the property found. While the search was taking place, Tribal Investigator Nelson Heart arrived and was advised of what had taken place. Heart called the FBI and was informed that a tribal search warrant should probably be

obtained. BIA Officer Hoeger then obtained a tribal search warrant (the 2nd warrant) from Judge ElMarie Conklin that same evening. The officers again proceeded with the search.

During the search of the vehicle after the first search warrant was obtained, the BIA officers found several items associated with controlled substances which included 1½ pounds of marijuana and a jar containing a cloudy liquid. After obtaining the second warrant, the officers found additional marijuana, a scale, a burnt marijuana cigarette, and other drug paraphernalia items.

Thereafter, the BIA officers obtained a tribal arrest warrant for LaFountain and went to his hotel room (Rm.110) at the Four Bears Casino and Lodge to arrest LaFountain pursuant to the tribal arrest warrant. A security officer for the casino/hotel knocked on the door of LaFountain's hotel room. Present outside the door were BIA Officers Hoeger and Standish. The officers heard some banging inside the room. The security officer knocked again and identified himself, and more banging was heard. LaFountain then opened the door and was arrested without incident.

BIA Officer Standish asked LaFountain if he had any weapons to which LaFountain replied he had a knife in his pocket. However, a knife was not found in LaFountain's pocket. Thereafter, the officers conducted a search of the room. Officer Standish observed a metal Kleenex box attached to the wall above the sink near the bathroom. The sink was near the front entrance door to the hotel room. A small baggie of marijuana was found inside the metal Kleenex box. The marijuana was found after LaFountain had been handcuffed on the floor near the entrance door.

Defendant LaFountain was charged with possession of 1½ pounds of marijuana with intent to distribute. LaFountain seeks to have the evidence seized during the search of the pickup truck suppressed. In addition, LaFountain seeks to have evidence found in the hotel room at the time of his arrest suppressed.

## II. LEGAL ARGUMENT

■ The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. *United States v. Alberts,* 721 F.2d 636, 638 (8th Cir.1983). When an individual's home or vehicle is searched without a warrant, the government bears the burden of justifying the search. *United States v. Selberg,* 630 F.2d 1292, 1294 (8th Cir.1980). This justification must be made by way of evidence proving the existence of an exception to the warrant requirement. *United States v. Bruton,* 647 F.2d 818, 822 (8th Cir.1981).

### A. SEARCH OF THE PICKUP TRUCK.

LaFountain first seeks to suppress evidence found in the pickup truck driven by co-defendant Edward Forschen. LaFountain contends that since a tribal judge issued the first search warrant, there was a clear violation of Rule 41(a) of the Federal Rules of Criminal Procedure which requires the suppression of all evidence found in the truck. LaFountain also contends that both search warrants obtained from the tribal court judge and the arrest warrant should be considered federal warrants that are not in compliance with Rule 41(a). As a result, LaFountain contends that all evidence discovered should be suppressed, including the evidence of marijuana obtained from the hotel room.

■ When the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing that its conduct fell within the bounds of an exception to the warrant requirement. *United States v. Riedesel*, 987 F.2d 1383, 1388 (8th Cir.1993). One exception to the warrant requirement allows the police to search a lawfully arrested individual's person and the immediately surrounding area, the rationale being the need to remove any weapons than an arrestee might use against the arresting officers or someone else and the need to prevent the concealment or destruction of evidence. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Supreme Court has applied this exception to the context of vehicle searches when an occupant has been arrested. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In *Belton*, the Court fashioned a clearly-defined rule for such automobile searches: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*

■ It is well-established that law enforcement officers may conduct a warrantless search of a vehicle as long as the officers have probable cause to believe the vehicle contains contraband or other evidence of illegal activity. *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000). In other words, when police have probable cause to search a vehicle, the Fourth Amendment does not require a warrant. *See Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). It is not necessary that such a warrantless search be conducted at the moment the vehicle is seized. The search may be conducted even after the vehicle has been impounded. *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). *See*

*Capraro v. Bunt*, 44 F.3d 690, 691 (8th Cir.1995). Law enforcement may even take protective custody of a vehicle when they have arrested its occupants and even if the vehicle is lawfully parked and poses no public hazard. *U.S. v. Hood*, 183 F.3d 744, 746 (8th Cir.1999).

The reasons for this automobile exception to the warrant requirement are twofold: "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). This reduced expectation of privacy derives not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. *Id.* "Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements." 471 U.S. 386, 391–392, 105 S.Ct. 2066, 85 L.Ed.2d 406. "As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order." *Id.*

A search of an automobile based on probable cause proceeds on a theory different from that justifying a search incident to an arrest: "The right to search and the validity of the seizure are not dependent on the right to arrest" but instead "on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Chambers v. Maroney*, 399 U.S. 42, 49, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Additionally, unlike a search incident to arrest,

there is no requirement that a warrantless search of an automobile based upon probable cause must occur contemporaneously with the lawful seizure of the automobile. *See United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). "[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized." *Id.* "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." *Id.*

■ Finally, in addition to warrantless searches incident to arrest and warrantless searches based upon probable cause, authorities may conduct an "inventory search" of legally seized[1] automobiles. Authorities who legally seize an automobile are "entitled to inventory the contents of the [automobile] and take possession of the items found therein." *U.S. v. Rankin,* 261 F.3d 735, 740 (8th Cir. 2001). The rationale for allowing such an inventory to be taken is that it will protect the owner's property, protect the police against claims of lost or stolen property, and protect the police from potential danger. *United States v. Hartje,* 251 F.3d 771, 775 (8th Cir.2001). "The central inquiry in determining whether such an inventory search is reasonable is a consideration of the totality of the circumstances." *U.S. v. Rankin,* 261 F.3d 735, 740. "[I]nventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." *Id.* Thus, law enforcement officers "may not raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence." *United States v. Hartje,* 251 F.3d 771, 776. They may, however, keep their eyes open for potentially incriminating items "as long as their sole purpose is not to investigate a crime." *Id.*

■ In this case, the initial traffic violation clearly created probable cause to stop the driver of the vehicle. *U.S. v. Gregory,* 302 F.3d 805, 809 (8th Cir.2002). The Court concludes that the law enforcement officers also had probable cause to believe that Forschen's pickup truck contained contraband. Officer McLeish observed a glass tube with a melted end and white residue on it when he first opened the driver's door. McLeish testified that he believed the glass tube was drug paraphernalia. LaFountain has not challenged the initial stop of the vehicle and arrest. LaFountain does not contend that there was no proper showing of probable cause under the circumstances; that the affidavit submitted in support of the search warrant(s) was false; that the issuing tribal court judge was incompetent or lacked neutrality; or that the search was otherwise unreasonable. LaFountain only contention is that the evidence should be suppressed because the warrant was not issued by a federal magistrate judge or a state court of record as required by Rule 41(a) of the Federal Rules of Criminal Procedure.

The Court concludes that regardless of whether the first search warrant on a federal form executed by a tribal court judge *or* the second tribal search warrant were invalid, the evidence found in the pickup truck should not be suppressed since a

---

1. In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court held that the Fourth Amendment is not violated when police impound and conduct an inventory search of an illegally parked vehicle, explained that, in many situations, impounding reasonably serves the interests of public safety and "community caretaking functions." In *United States v. Martin,* 982 F.2d 1236, 1240 (8th Cir.1993), the Eighth Circuit held that police may take protective custody of a vehicle when they have arrested its occupants even if it is lawfully parked and poses no public safety hazard.

search warrant was not required under the circumstances. *See United States v. Schmidt*, 662 F.2d 498, 504, n. 8 (8th Cir. 1981)(where probable cause for a warrantless arrest exists, the arrest is not invalidated because it was made pursuant to a warrant later found to be invalid).

■ Based upon the facts presented, it is clear that the initial search of the pickup truck by Officer McLeish was a lawful search incident to arrest; that Officer McLeish's initial search of the truck was contemporaneous with the lawful arrest of the driver (Forschen) on charges of driving under suspension; and that there was probable cause to believe the pickup contained contraband which justified a warrantless search under the circumstances. As a result, the evidence (the crack pipe) discovered by Officer McLeish during his initial search of the vehicle should not be suppressed. An officer conducting a traffic stop may expand the scope of his investigation as reasonable suspicion dictates. *U.S. v. Gregory*, 302 F.3d 805, 809 (8th Cir.2002). Presumably, it was Officer McLeish's discovery of the crack pipe that prompted him to return to the truck with BIA Officers Hoeger and Standish and resume the search. At that point, based upon the discovery of the crack pipe in plain view, as well as Officer Hoeger's discovery of tinfoil & baggies on the floor, and other items he reasonably suspected were used in the drug trade, the officers had probable cause to search the truck.

Without addressing the validity of the warrant, it is clear and undisputed that the law enforcement officers had probable cause to search the truck. As case law cited above establishes, there is no requirement that a warrantless search of an automobile based upon probable cause must occur contemporaneously with the lawful seizure of the automobile. Given the totality of the circumstances, the Court concludes that no warrant would have been required.

## B. *LAFOUNTAIN'S STANDING TO CHALLENGE THE VALIDITY OF THE SEARCH*

■ One issue that neither party addressed is whether LaFountain has standing to object to the search of the pickup truck given the fact that it was not his truck. It is well-settled that "the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. Mendoza*, 281 F.3d 712, 715 (8th Cir.2002). The ownership, possession and/or control of the area searched or item seized is relevant to the analysis. *See United States v. Green*, 275 F.3d 694, 698 (8th Cir.2001).

LaFountain can assert a violation of his Fourth Amendment rights only if he can demonstrate a legitimate expectation of privacy as a passenger of the truck owned and operated by co-defendant Forschen. The United States Supreme Court has determined that a person has no reasonable expectation of privacy in an automobile belonging to another. *Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). There is nothing in the facts presented to indicate that LaFountain had a possessory or privacy interest in the pickup truck. As a passenger, LaFountain would arguably not even have the right to challenge the search of the truck. *Green*, 275 F.3d 694, 698. The only legitimate issue for LaFountain to contest would be the lawfulness of his own detention and any evidence obtained therefrom. Nevertheless, a resolution of this issue is not critical but there are serious questions concerning LaFountain's standing to challenge the search.

## C. SEARCH OF LAFOUNTAIN'S HOTEL ROOM

LaFountain also challenges the seizure of the marijuana found in the hotel room where he was staying the evening after the initial stop. As previously noted, the BIA officers went to LaFountain's hotel room at the Four Bears Casino and Lodge to execute a tribal arrest warrant. According to the evidence presented at the hearing, LaFountain was arrested without incident when he opened the door to his hotel room. Officer Standish observed a metal Kleenex box attached to the wall in the bathroom in which a small amount of marijuana was discovered. The evidence revealed that the Kleenex box was located approximately 5–8' from LaFountain at the time of his arrest when the marijuana was found. Other evidence presented placed LaFountain within 3' as the Kleenex box was located near the entrance of the door to the room.

■■■■ It is well-established that when a person is arrested, law enforcement officers are entitled to conduct a search incident to the arrest. In cases where the arrest occurs in a home, or at a hotel/motel room, the search is limited to the arrestee's person and those areas within the immediate control of the arrestee. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Miller*, 946 F.2d 1344, 1345 (8th Cir.1991). The area within the immediate control of the arrestee is that area in which he might be able to obtain a weapon or destroy evidence. In determining whether a search incident to an arrest is valid, the Court must evaluate the totality of the circumstances. *United States v. Lucas*, 898 F.2d 606, 609 (8th Cir.1990).

In this case, when the BIA officers and the hotel security officer went to LaFountain's room and knocked on the door, they heard noises. Officer Standish testified that when LaFountain opened the door, he ordered LaFountain to lay down on the floor. Officer Standish asked LaFountain if he had any weapons and LaFountain indicated that he had a knife in his back pocket. A search of LaFountain's person did not reveal a knife and the officers then began searching the room. It was at that time that Officer Standish found the marijuana in the metal Kleenex box located near the entrance door and approximately 5–8' from LaFountain on the floor. The Kleenex box was located approximately 3' from the entrance door to the room. If that area is within a few feet, it could easily be considered within LaFountain's immediate control. *See United States v. Miller*, 946 F.2d 1344, 1346 (8th Cir. 1991)(an area within 4–4½ feet was within the control of the defendant).

■■■■ LaFountain does not contend that probable cause was lacking for his arrest. The arrest of LaFountain when he opened the door to the room and the search incident to his arrest were proper and lawful. The BIA officers were entitled to search the areas within LaFountain's immediate control. The marijuana was found in a metal Kleenex box attached to the wall near the entrance door to the room. This is an area that was within LaFountain's immediate control when he answered the door. The Court concludes that the baggie of marijuana found in the metal Kleenex box near the entrance door to LaFountain's room was in an area within LaFountain's immediate control. As such, the evidence seized is not excludable.

## D. THE SEARCH WARRANTS WERE NOT ISSUED IN COMPLIANCE WITH RULE 41(a). HOWEVER, THE ERROR WAS HARMLESS UNDER THE CIRCUMSTANCES.

Rule 41(a) of the Federal Rules of Criminal Procedure provides that federal

search warrants must be issued by a federal magistrate judge or a state court judge of record within the federal district involved. The Rule reads as follows:

**Authority to Issue Warrant.** Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person wit in the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed and (3) in an investigation of domestic terrorism or international terrorism (as defined in section 2331 of title 18, United States Code), by a Federal magistrate judge in any district in which activities related to the terrorism may have occurred, for a search of property or for a person within or outside the district.

It is undisputed that the two search warrants in this case were issued and signed by a tribal court judge. There is no dispute that a warrant issued by a tribal court judge does not comply with the requirements of Rule 41(a). *See United States v. MacConnell*, 868 F.2d 281, 283 (8th Cir.1989).

▮ Although Rule 41(a) was violated, suppression of the evidence is not automatically required in every case in which a technical violation has occurred. This Court is required to analyze the facts and the issues utilizing the approach adopted by the Eighth Circuit Court of Appeals in *United States v. Burgard*, 551 F.2d 190, 193 (8th Cir.1977). In *Burgard*, the Eighth Circuit established that suppression of the evidence is not appropriate unless there is a showing of 1) prejudice in

the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed; or 2) evidence of intentional or deliberate disregard of the Rule. 551 F.2d 190, 193. In other words, to warrant suppression of the evidence, a defective warrant must be unconstitutional or borderline, prejudice must be suffered by a defendant, or bad faith must exist on the part of the officer who obtained the warrant. *See United States v. Luk*, 859 F.2d 667 (9th Cir.1988); *United States v. Burke*, 517 F.2d 377 (2nd Cir.1975). In *Burgard*, the 8th Circuit refused to suppress the evidence obtained during the search and found that the failure to comport with Rule 41(a) was inadvertent and that the harsh application of the exclusionary rule would be inappropriate.

▮ In this case, LaFountain alleges prejudice because a search warrant was issued by an unauthorized judge. He contends that the federal search warrants may only be issued by a federal magistrate judge or a state court judge. The Court concludes that no prejudice exists such that "the search might not have occurred or would not have been so abrasive if the rule had been followed." There is no evidence that the search warrants would not have been issued otherwise. The second search was pursuant to a tribal warrant issued by a tribal court judge. Further, a warrantless search of the pickup truck was permissible under the circumstances.

In *United States v. Comstock*, 805 F.2d 1194 (5th Cir.1986), the court refused to suppress evidence where an unauthorized court issued a search warrant determined to be a federal warrant and the officers had acted in good faith. In evaluating the totality of the circumstances presented in this case, the Court concludes that the law enforcement officers acted in good faith. The actions taken by the law enforcement

officers from the time the pickup was stopped until LaFountain was arrested were indisputably reasonable. There has been no evidence presented which demonstrates a lack of good faith, or some knowing or intentional violation of Rule 41(a) on the part of the law enforcement officers. As noted, a search warrant was not initially required to search the pickup truck. Rather than conduct a warrantless search, the BIA officers sought and obtained a search warrant on a federal form from a tribal court judge. A federal search warrant form was used because that was the only form the officers had available to them at the time. None of the law enforcement officers involved in the scenario of events that evening were familiar with the requirements of Rule 41(a), nor apparently was the tribal court judge who signed the search warrants. The Court concludes that these facts clearly demonstrate good faith actions on the part of the officers rather than an intentional or deliberate disregard of Rule 41(a).

### III. CONCLUSION

Based upon the evidence presented and a careful analysis of the totality of the circumstances, the Court concludes that the evidence seized during the search of Edward Forschen's pickup truck should not be suppressed and that a search warrant for the truck was not necessary under the circumstances. The Court concludes that the evidence found in LaFountain's hotel room at the Four Bears Casino and Lodge should not be suppressed because the law enforcement officers had a valid tribal arrest warrant and the search incident to Lafountain's arrest was proper and was not overbroad in scope. Finally, the Court concludes that the search warrant issued by the tribal court judge did not comply with the strict requirements of Rule 41(a) of the Federal Rules of Criminal Procedure because the warrant was issued by a judge who is neither a federal magistrate judge nor a judge of a state court of record. Nevertheless, the suppression of the fruits of the search is not required based upon the analysis undertaken pursuant to *United States v. Burgard,* 551 F.2d 190 (8th Cir.1977). Any error in the issuance of the warrants is harmless error under the circumstances which does not require the suppression of the evidence. The Court has conducted a careful analysis of the relevant factors to be considered as established by the Eighth Circuit Court of Appeals. From the totality of the circumstances, the Court concludes that the evidence seized during the search of the pickup truck, and the search of the hotel room incident to LaFountain's arrest, should not be suppressed.

For the reasons outlined above, the Court **DENIES** the Defendants' Motion to Suppress.