# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1652

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of North Dakota. |
| Francis K. Zacher, | * | |
| Appellant. | * | |

_____

Submitted: September 26, 2006
Filed: October 11, 2006

_____

Before ARNOLD, BYE, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Francis Zacher was indicted for conspiracy to distribute methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), 846, possession of firearms by a user of a controlled substance, *see* 18 U.S.C. §§ 922(g)(3), 924(a)(2), and possession of an unregistered firearm, *see* 26 U.S.C. §§ 5861(d), 5871. Before trial, Mr. Zacher moved to suppress evidence that the police had obtained by searching various FedEx packages and his home. The district court[1] denied the motion, Mr. Zacher appealed, and we affirm.

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

## I.

Lenise Jessen, a FedEx employee, was suspicious of the package that Madina Helm had dropped off. Ms. Helm and Mr. Zacher had sent numerous parcels to one Jesse Garcia in recent weeks, and the frequency of these shipments was growing. Ms. Jessen called Detective Cody Trom of the Bismarck, North Dakota, police department to convey her suspicions. Detective Trom decided to investigate and came to the FedEx facility followed shortly by a canine unit.

Once at the facility, Detective Trom took the package from Ms. Jessen and placed it on the floor with several others. The dog alerted to the package, tearing a hole in the cardboard envelope in the process. To confirm the alert, the police had Ms. Jessen hide the package, and the dog found it and alerted again.

After the dog alerted the second time, the police called a state's attorney, who contacted a local magistrate. The magistrate heard sworn testimony from the dog's handler, Officer Glen Valley, over the telephone and ordered that a warrant be issued. A copy of the search warrant faxed to the FedEx facility was illegible, so an unsigned copy was sent via e-mail to Detective Trom while he was at the FedEx office. The detective gave Ms. Jessen a copy of the warrant and took the package and another copy of the warrant to the magistrate's home. After the magistrate signed the warrant, Detective Trom returned to the police station, opened the box within the torn envelope, and discovered $5,200 in currency. The police decided to repackage the currency and have it delivered to Mr. Garcia without telling Mr. Zacher, Ms. Helm, or Mr. Garcia of the search and seizure.

## II.

Mr. Zacher maintains that the police violated his fourth amendment rights because they did not have reasonable suspicion that the package contained contraband when they seized it. A law enforcement officer must have reasonable suspicion before he or she may seize a package for investigatory purposes. *United States v. Logan*, 362

F.3d 530, 533 (8th Cir. 2004). We review the district court's findings of fact for clear error and its legal conclusions about reasonable suspicion *de novo*. *See United States v. Rodriguez-Lopez*, 444 F.3d 1020, 1022 (8th Cir. 2006).

Everyone agrees that the police seized the FedEx package in question; the pertinent issue is when the seizure occurred. A recent en banc decision of ours governs the determination of when a detention of a package amounts to a seizure for fourth-amendment purposes. In that case, the defendant argued that law enforcement had unlawfully seized his checked luggage. The opinion explains that a seizure occurs only when law enforcement " 'meaningfully interfere[s]' " with an individual's possessory interests in the property. *United States v. Va Lerie*, 424 F.3d 694, 701, 706 (8th Cir. 2005) (en banc), *cert. denied*, 126 S.Ct. 2966 (2006) (quoting *United States v. Jacobsen*, 466 U.S. 85, 113 (1984)). We went on to hold in that case that a meaningful interference with checked luggage occurs if the detention delayed the defendant's travel or had a significant impact on his or her freedom of movement, if it delayed the timely delivery of the luggage, or if it deprived a carrier of its custody of the checked luggage. *Id.* at 707. If any one of these conditions occurs, the government must show that there was sufficient information at the time of the seizure for a reasonable officer to suspect that the luggage contained contraband or evidence of illegal activity. *See id.*; *United States v. Smith*, 383 F.3d 700, 704 (8th Cir. 2004). Where, as here, a defendant challenges the detention of a parcel traveling through the mails or by means of an equivalent commercial carrier, the first of the conditions listed in *Va Lerie* is of course out of the case.

Mr. Zacher contends first that when the police delayed the timely delivery of the package they lacked sufficient grounds to seize it. The package was supposed to be delivered the next day, and FedEx had to send it out by 6:30 p.m. to meet that deadline. Thus, under *Va Lerie*, a seizure occurred when the police detained the package past 6:30 p.m. By that time, however, the dog had alerted to the package, and we have held that a dog's positive indication is enough to raise a suspicion sufficient

to allow the police to seize a package for further investigation. *See United States v. Graham*, 982 F.2d 273, 274 (8th Cir. 1992) (per curiam).

Mr. Zacher points out that it may have been after 6:30 p.m. when the police completed their second test by hiding the package and having the dog search for it. But the mere fact that the officers decided to conduct another test does not mean that reasonable suspicion did not already exist. The question of reasonable suspicion is an objective one, and it exists when there is sufficient information for a reasonable officer to suspect that the package contained contraband or evidence of illegal activity. *See United States v. Payne*, 119 F.3d 637, 642 (8th Cir. 1997). Because we see no evidence that would cause a reasonable officer to doubt the validity of the dog's first alert, we hold that the dog's first alert created reasonable suspicion, which permitted the police to seize the package for investigation.

Mr. Zacher argues, in the alternative, that the police wrested custody of the package from FedEx before there was reason to suspect that it contained contraband. We have stated that the sender's reasonable expectations of how the carrier would handle the package define the scope of the carrier's custody. *See Va Lerie*, 424 F.3d at 707 n.7. No change in custody occurred when Detective Trom placed the package on the floor, since a reasonable person could expect FedEx to handle his or her package the same way. Mr. Zacher admits as much, but he argues that no reasonable person would expect that FedEx would let a dog tear a hole in a package. But even if that conduct gave rise to a change in custody and thus to a seizure, the tearing occurred because the dog alerted by pawing and biting at the package. The police therefore acquired reasonable suspicion to seize the package at the same moment that any change in custody occurred. We therefore reject Mr. Zacher's alternative argument.

### III.

Mr. Zacher also contends that the police violated North Dakota Rule of Criminal Procedure 41(d) by failing to provide him with a copy of the warrant and a

receipt detailing what was seized, and that this violation requires that the contents of the package be suppressed. As Mr. Zacher points out, the relevant portion of the state procedural rule is virtually identical to Fed. R. Crim. P. 41(f)(3): Both rules require the police either to "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or ... leave a copy of the warrant and receipt at the place where the officer took the property." N.D. R. Crim. P. 41(d)(2); *see* Fed. R. Crim. P. 41(f)(3).

Not all violations of this type of rule require the suppression of evidence; we have said that innocent mistakes that do not prejudice the defendant may be excused. *See United States v. Schroeder*, 129 F.3d 439, 443-44 (8th Cir. 1997); *see also United States v. Burgard*, 551 F.2d 190, 193 (8th Cir. 1977). But our review of the record reveals no substantial violation of the rule, let alone a deliberate or prejudicial one that would require suppression. The rule gives the police two options: they may either give the warrant and receipt to the person from whom the property was taken, or from whose premises the property was taken, or they may leave a copy of the warrant and receipt where they seized the item. The police chose the second option and left a copy of the warrant at the FedEx facility. That FedEx failed to relay this information to Mr. Zacher is immaterial, and the fact that the officers left an unsigned, rather than a signed, copy of a warrant that the magistrate had approved is an innocent mistake that had no effect on Mr. Zacher. Although we cannot be certain from the record whether the police left a copy of a "receipt for the property" at FedEx, Mr. Zacher does not raise this matter, and FedEx was obviously aware of what package was taken. Mr. Zacher has not pointed to any evidence of a deliberate or prejudicial rule violation by the officers, and thus we reject his contention that the package should have been suppressed.

## IV.

Two weeks after Ms. Helm dropped off the package, FedEx received a package from Mr. Garcia for delivery to Mr. Zacher. A police dog alerted to this package, and

a local judge authorized a search warrant. This time the package contained methamphetamine. Based on this information, Detective Trom asked for and received a warrant to search Mr. Zacher's residence. That search revealed numerous firearms and other evidence of drug trafficking.

Mr. Zacher argues that because the seizure of his first package was illegal, the district court should have excluded the subsequently discovered evidence. This argument is without merit: Because we have already held that the seizure of the first package did not violate the fourth amendment or involve more than a *de minimis* violation of North Dakota Rule 41(d), the "fruit of the poisonous tree" doctrine could not apply to any subsequent evidence that the police discovered.

Affirmed.

_____