STATE of Minnesota, Respondent,

v.

Stephen John FELLEGY, Appellant.

No. A11–1097.

Court of Appeals of Minnesota.

July 11, 2012.

Lori Swanson, Attorney General, St. Paul, MN, and James P. Ratz, Aitkin County Attorney, Benjamin M. Smith, Assistant County Attorney, Aitkin, MN, for respondent.

Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and WILLIS, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

ROSS, Judge.

Stephen Fellegy caught a walleye out of season protesting what he views to be the state's unjust, favorable treatment of Ojibwe, the Native Americans whose treaty rights exempt them from prosecution for violating the state's fishing restrictions on Lake Mille Lacs. The state charged Fellegy, who is not Ojibwe, for his violation. Before trial, Fellegy challenged the charge as unconstitutional selective enforcement in violation of his constitutional right to equal protection under the law. The district court rejected Fellegy's challenge without holding an evidentiary hearing and found him guilty of illegal fishing. Fellegy appeals, arguing that he is entitled to an evidentiary hearing on his motion. We affirm the conviction because a district court need not conduct an evidentiary hearing to explore a pretrial claim of unconstitutional selective enforcement when the defendant has not asserted facts that, if proven, would substantiate the claim.

## FACTS

Two days before the walleye fishing opener in May 2010, Stephen Fellegy caught a walleye on Lake Mille Lacs in Aitkin County. He kept the fish and announced his out-of-season catch in an internet website message read by Minnesota Department of Natural Resources conservation officers. The officers investigated. Fellegy told them that he had intentionally caught and kept the fish in protest over fishing rights. The Aitkin county attorney filed charges against Fellegy for taking the walleye out of season. *See* Minn.Stat. § 97C.395, subd. 1(a)(1) (2008).

Fellegy pleaded not guilty. The district court scheduled a court trial for November 2010. On the day set for trial, Fellegy appeared without counsel and explained his defense. He did not dispute that he took the walleye out of season. Instead, he defended based on a racially oriented equal protection theory, contending,

> [The charge must be dismissed] based on the fact that during the same time frame in Minnesota and Wisconsin citizens harvested approximately 65 tons of walleyes from the same lake. In the end, solely based on skin color and ethnic origin this charge discriminates against me and should be dismissed; and if not dismissed, I should be found not guilty based on the protection of such discrimination.

He added, "[I]f other citizens harvested fish during the same time frame out of the same body of water . . . I question how the lake could be considered closed." The district court treated Fellegy's expression as a constitutional challenge arising from his right to equal protection and deemed it a pretrial motion to dismiss the charge. The district court directed the state and Fellegy to submit written memoranda on the motion before January 1, 2011.

On December 15, 2010, the state filed its brief on Fellegy's equal protection challenge. That same day, the district court judge presiding over the case recused himself and the matter was reset for a pretrial hearing to occur January 10. Fellegy sent a letter to the district court on December 23 explaining that he was retaining counsel and requesting that the pretrial hearing be rescheduled for a later date. He submitted no memorandum and made no request regarding the deadline.

The district court rescheduled the pretrial hearing for March 24, 2011. Fellegy, represented by counsel, filed a memorandum of law on March 21, 2011. Like his November 2010 oral argument, Fellegy's March 2011 written brief made a racially oriented equal protection challenge. But he based the challenge on different facts.

Rather than claiming, as he had in November 2010, that he had been discriminated against because Native Americans can fish freely on Lake Mille Lacs in Aitkin County while he cannot, he claimed that he had been discriminated against because Native Americans had caught fish before the opener on Lake Bemidji in Beltrami County without being prosecuted. He attached a newspaper account of a single incident of apparently illegal fishing on Lake Bemidji and argued that although conservation officers in fact stopped two Native Americans from fishing in that instance, the Beltrami county attorney had not apparently charged the alleged offenders. Fellegy emphasized that this permissive treatment of the Native Americans by the Beltrami county attorney differed from how the Aitkin county attorney treated him.

A second judge presided over the March 24 hearing. The state inquired about the status of Fellegy's motion and reminded the court that the previous judge had ordered the parties to brief the equal protection issue. The district court stated that the file lacked any formal motion and that if a formal motion were filed it would be set for an evidentiary hearing. It then scheduled a conference and court trial for June 7, 2011. Fellegy did not formalize his motion or request an evidentiary hearing.

A third judge presided over the court trial on June 7. After meeting in chambers, the district court made a record of the procedural history. It declared that Fellegy had made two distinct motions and that by not briefing the equal protection argument that he made orally in November 2010 by the court's briefing deadline of January 1, 2011, he had waived the motion. It also denied the motion on the alternative ground that it failed as a matter of law under *Washington v. Washington State Commercial Passenger Fishing Vessel As-*

*sociation,* 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). The district court treated Fellegy's March 2011 pleading as a different and new pretrial motion, and it denied it without reaching its merits, deeming it untimely. It then tried the case and found Fellegy guilty.

Fellegy appeals.

## ISSUES

I. Did the district court abuse its discretion by deeming as waived the motion to dismiss that Fellegy raised orally on November 2010 or err by denying the motion on the merits?

II. Did the district court abuse its discretion by dismissing as untimely the motion that Fellegy raised in his March 2011 memorandum?

III. Did the district court abuse its discretion by failing to order an evidentiary hearing before denying Fellegy's motion to dismiss?

## ANALYSIS

Fellegy challenges the district court's decision in several respects. He maintains that the district court erred by deeming as waived the motion that he raised orally on the originally scheduled trial date of November 2010, and he also contests the court's denial of that motion on the merits. He contends that the district court erred by denying as untimely the motion that he raised in his March 2011 memorandum. And he maintains that the district court was obligated to schedule an evidentiary hearing on that motion. We take up each argument in turn.

### I

We are not persuaded by Fellegy's argument that the district court erroneously rejected his original, November 2010 mo-

tion. The district court first held that Fellegy waived the motion by failing to file a supporting memorandum before the January 1, 2011 deadline, and it also held that the November 2010 motion fails on the merits. The district court's holdings are unassailable.

We first address whether Fellegy forfeited his motion. We review the district court's decision for an abuse of discretion. *C.f. State v. Hart,* 723 N.W.2d 254, 259–60 (Minn.2006) (recognizing district court's authority to ensure that the court calendar runs on time and noting that "the district court has considerable discretion in scheduling matters and in furthering what it has identified as the interest of judicial administration and economy" (quotation omitted)). "Defenses, objections, issues, or requests that can be determined without trial on the merits must be made before trial by a motion to dismiss or to grant appropriate relief. The motion must include all defenses, objections, issues, and requests then available." Minn. R.Crim. P. 10.01, subd. 2. Unless made during a trial or hearing, motions in a misdemeanor case must be made in writing and served with supporting affidavits on opposing counsel at least three days before the hearing and no more than 30 days after arraignment unless the court for good cause permits the motion to be made or served at a later time. Minn. R.Crim. P. 10.03, subd. 1, Minn. R.Crim. P. 32. Although Fellegy was unrepresented at the time of his motion, pro se litigants are generally held to the same standards as attorneys and must comply with all rules of procedure. *See State v. Seifert,* 423 N.W.2d 368, 372(Minn.1988).

Construing Fellegy's November 2010 assertions carefully, we conclude that he moved the district court to dismiss the charges because he had been the subject of a particular type of prosecutorial discrimination. He asserted that he had been the target of unconstitutional selective enforcement of the fishing laws based on his race specifically because, "during the same time frame" in which he took the walleye from Lake Mille Lacs, others, "solely based on skin color and ethnic origin," had "harvested approximately 65 tons of walleyes from the same lake" without being subject to prosecution. Fellegy did not expressly say so, but it is clear from the circumstances that the unspecified others who were not prosecuted for fishing in Mille Lacs because of "skin color and ethnic origin" were Native Americans.

The district court treated Fellegy's assertion as a motion to dismiss and ordered the parties to provide supporting or opposing memoranda by January 1, 2011. Fellegy never provided a written memorandum in support of his specific contention that the charge against him was subject to dismissal because he was being prosecuted for fishing out of season in Lake Mille Lacs while Native Americans are not. As the district court later put it, "January 1, 2011, came and went, and Mr. Fellegy did not file any brief." On that ground, we cannot say that the district court abused its discretion by denying the motion on the day of trial, June 7, 2011, by which point Fellegy still had not provided any legal support for his November 2010 contention.

We recognize that Fellegy did file a memorandum on March 21, 2011, also alleging unconstitutional selective enforcement of the fishing laws based on race. But we hold that the district court accurately construed the memorandum as not supporting the November 2010 motion and as attempting to present a new motion. Fellegy's March 2011 memorandum abandoned altogether Fellegy's original factual premise. The memorandum does not attempt to support his specific declaration that his equal protection rights were vio-

lated because some Native Americans may, without risk of prosecution, fish out of season on Lake Mille Lacs while he was being prosecuted for the same conduct. Instead, Fellegy's March 21 memorandum contended that his equal protection rights were violated because two Native Americans fishing illegally on Lake Bemidji in Beltrami County were not being prosecuted by the Beltrami county attorney while he was being prosecuted by the Aitkin county attorney for fishing on Lake Mille Lacs in Aitkin County.

The difference between the two assertions is substantial and supports the district court's decision to treat them as different motions. Fellegy accurately points out that the November 2010 and March 2011 arguments both rest on the premise that the equal protection guarantees of the United States and Minnesota Constitutions forbid racially motivated selective and discriminatory enforcement of nondiscriminatory laws. *See Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886); *City of Minneapolis v. Buschette,* 307 Minn. 60, 64, 240 N.W.2d 500, 502 (1976); *see also State v. Russell,* 477 N.W.2d 886, 893 (Minn.1991) (confirming that equal protection is an "unenumerated" constitutional right found in the state constitution (quotation omitted)). And it is true that both referred expressly or implicitly to the Chippewa (Ojibwe) Indians. But the Ojibwe have rights under a federal treaty to take fish from Lake Mille Lacs in what is now Aitkin County. *See Minnesota v. Mille Lacs Band of Chippewa Indians,* 526 U.S. 172, 175–76, 119 S.Ct. 1187, 1190–91, 143 L.Ed.2d 270 (1999); 1837 Treaty with the Chippewa, Arts. 1, 5. And there is no corresponding treaty right for them to take fish from Lake Bemidji in what is now Beltrami County.

The distinction is significant here because, on the different lakes at issue, the Ojibwe have a different comparative relationship to Fellegy. A defendant cannot make out a constitutional case of selective discriminatory prosecution unless he satisfies his "heavy burden of establishing," among other things, that "others similarly situated" have not faced prosecution for the same conduct giving rise to his prosecution. *State v. Russell,* 343 N.W.2d 36, 37 (Minn.1984). Fellegy, who has no apparent claim to a treaty right to take fish from Lake Mille Lacs, is not similarly situated to the Ojibwe, who take fish from the lake under their treaty rights. So they are not similarly situated to Fellegy as it regards fishing rights on Lake Mille Lacs. Put another way, Fellegy's claim that the Ojibwe avoid prosecution "solely based on skin color and ethnic origin" is obviously flawed; the tribe members avoid prosecution because, based on the Constitution's Supremacy Clause, the tribe's right under its treaty with the United States supersedes the state's authority to prevent its members from taking fish from Lake Mille Lacs.

In contrast, Fellegy's new position as asserted in March 2011 does not rest on a comparison between himself and those whose treaty rights render them dissimilarly situated. Also in contrast, his new, March 2011 pleading does not assert that his prosecutor's decision not to prosecute other individuals reflects racial discrimination, since the only allegedly similarly situated persons his March 2011 pleading refers to were fishermen in Beltrami County, not Aitkin County. As Fellegy's oral argument to the district court in support of his March 2011 memorandum acknowledges, the two counties have different, autonomous charging authorities:

I appreciate the Aitkin County Attorney's position that these conservation officers should ... testify against my

client for taking a single walleye out of Mille Lacs Lake ..., but the Beltrami County Attorney isn't doing any of this. He's not acting on the conservation officer's file.

For these reasons we hold that the district court accurately understood Fellegy's March 2011 memorandum to constitute a different motion from his November 2010 motion and appropriately denied the November 2010 motion as forfeited for lack of any supporting memorandum.

We also hold that the district court appropriately denied the November 2010 motion on the alternative ground that the motion has no legal merit. The district court cited only *Washington v. Washington State Commercial Passenger Fishing Vessel* Association as its ground for denying the motion. This was sufficient. The *Fishing Vessel* court established that a tribe's federal treaty rights to hunt, fish, and gather on state land can coexist with state natural resources management plans. 443 U.S. at 684–85, 99 S.Ct. at 3074. The *Mille Lacs Band* court relied on *Fishing Vessel* when affirming the Eighth Circuit Court of Appeals decision verifying the continued force of the Ojibwe's 1837 treaty rights to fish in ceded waters, including Lake Mille Lacs. *See Mille Lacs Band,* 526 U.S. at 204–05, 119 S.Ct. at 1204–05. Without expressly saying so, the district court in abbreviated fashion recognized the legal distinction between Fellegy's and the Ojibwes' fishing right on Lake Mille Lacs and held that Fellegy's November 2010 motion failed because he did not identify any dissimilarly treated similarly situated persons in support of his equal protection claim. For the reasons already discussed, the holding is correct, and no evidentiary hearing would change that facially apparent legal conclusion.

## II

■ We also are not persuaded that the district court abused its discretion by denying Fellegy's motion as presented in his March 2011 memorandum. The district court dismissed the motion as untimely. Fellegy acknowledges that he filed his motion late, but he contends that the district court was obligated to consider it on the merits first because it "was not a new motion," second because there was no prejudice to the state, and third because it was "unjustly harsh" to deem the motion untimely as a penalty for Fellegy's failure to file a memorandum by the January 1, 2011 deadline. The arguments do not lead us to reverse.

We have already addressed Fellegy's assertion that the March 2011 motion was not a new one but rather the same as his November 2010 motion. Again, the district court appropriately treated it as a new motion given both its change in substance and Fellegy's failure to provide a timely memorandum addressing his November 2010 assertions.

We are not convinced by Fellegy's assertion that the state would have suffered no prejudice if it had to respond in writing a second time to Fellegy's then-shifted equal protection claims made months after the deadline imposed by the rules. *See* Minn. R.Crim. P. 10.03. And we observe that his argument about prejudice to the state does not consider the disruption to the district court's schedule or its responsibility and authority to hold parties accountable to reasonable deadlines. *See Hart,* 723 N.W.2d at 259–60. For this same reason, we do not agree that following the time restraints imposed by the rules or the court's own scheduling order is unjustly harsh here. We add that the record does not reflect that Fellegy ever asked the district court for leave to file his March 2011 motion after failing for two

months to file any memorandum in support of his November 2010 motion.

The district court has broad authority to fashion a remedy for untimely motions. Even if we were to conclude that the district court exceeded its discretion by denying Fellegy's March 2011 motion as untimely, we would nevertheless affirm the denial on the merits. We may affirm the district court on any ground, including one not relied on by the district court. *Kafka v. O'Malley,* 221 Minn. 490, 499, 22 N.W.2d 845, 849 (1946). Fellegy made no argument to the district court supporting his March 2011 assertion that the Beltrami county attorney's alleged decision not to prosecute two Ojibwe tribe members for fishing out of season on Lake Bemidji established a claim of unconstitutionally selective prosecution of Fellegy for fishing on Lake Mille Lacs. Fellegy did not allege that the two county attorneys—two separate and independent prosecutorial decision makers—acted in concert; he makes no connection between their separate prosecutorial decisions and race. And even if he had suggested that evidence exists to establish that the Beltrami county attorney who allegedly did not prosecute two Ojibwe tribal members did so because of their race, Fellegy does not suggest how this reflects racially oriented prosecution decisions by the Aitkin county attorney who prosecuted Fellegy. In short, his claim of selective enforcement requires proof of the decisionmaker's discriminatory intent, and the intent behind one prosecutor's action does not, without more, demonstrate the intent behind another's inaction.

### III

Fellegy contends that he was at least entitled to a pretrial evidentiary hearing before the district court denied his motion to dismiss. We are not persuaded. In *State v. Sharich,* the supreme court reversed the denial of a claim of discriminatory enforcement of antiprostitution laws by the Minneapolis police department's morals squad. 297 Minn. 19, 27, 209 N.W.2d 907, 913 (1973). The *Sharich* court remanded the case to the district court, instructing it to "permit the defendant to offer evidence to support her claim of discriminatory penal enforcement at the law-enforcement level. The defendant should be permitted to offer such evidence at a pretrial hearing with witnesses subpoenaed, if need be, and without the prior requirement of affidavits from prospective witnesses, who defendant claims are identified with that alleged ... discriminatory conduct." *Id.* at 26, 209 N.W.2d at 913. The supreme court later clarified that the procedure for raising a claim of discriminatory enforcement must be raised before trial on motion, with the defendant having the burden to produce evidence of discrimination by a clear preponderance of evidence. *Buschette,* 307 Minn. at 66, 240 N.W.2d at 503–04.

■ Relying on this caselaw, Fellegy argues that by asserting that the different charging decisions were racially motivated, he has made out a prima facie case of selective prosecution entitling him to an evidentiary hearing at which he could subpoena unspecified officials to test their motives. Neither the *Sharich* court nor the *Buschette* court required the district court to conduct an evidentiary hearing on an accusation that, on its face, lacks the essential elements necessary to support the constitutional claim. We hold that the district court need not conduct an evidentiary hearing to explore a criminal defendant's pretrial motion to dismiss a criminal charge based on the defendant's claim that the charge arose from selective prosecution and violates his constitutional right to equal protection if, as here, the defendant

makes only assertions that, even if proven, would not substantiate the claim.

■ The following standard must be met before a finding of selective, discriminatory enforcement:

> To support a defense of selective discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.,* based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional right.

*Russell,* 343 N.W.2d at 37 (quotation omitted). To trigger a pretrial hearing, the defendant must meet a threshold showing of alleging "sufficient facts to take the question past the frivolous state and to raise a reasonable doubt as to the prosecutor's purpose." *State v. Hyland,* 431 N.W.2d 868, 873 (Minn.App.1988). The district court was not compelled to order an evidentiary hearing to explore Fellegy's claim because Fellegy's assertions, taken in their most favorable light, could not move his claim of selective prosecution beyond the frivolous state. Combining his March 2011 written motion and his June 2011 day-of-trial argument to the district court, his only basis for his claim was the single decision by a different charging authority in a different jurisdiction not to charge individuals of a different race for violating the law that Fellegy was charged with violating. This allegation does not require an evidentiary hearing because the single comparative case in a different charging jurisdiction is not evidence that Fellegy's prosecution arose from unlawful discrimination. So, independent of the motion's untimeliness, this substantive deficiency also supports the district court's decision not to order an evidentiary hearing.

At oral argument on appeal, Fellegy's counsel suggested that an evidentiary hearing would have given Fellegy the chance to subpoena and probe unspecified state and county officials in the hope of finding some evidence supporting his belief that a state-wide discriminatory atmosphere exists. This is too speculative to require an evidentiary hearing, particularly since Fellegy waited seven months after asserting his equal protection theory and then three months after briefing his motion before he made a day-of-trial request for an evidentiary hearing. The district court properly denied Fellegy's request for more out-of-season fishing.

## DECISION

The district court did not err by deeming as waived Fellegy's first motion to dismiss or by denying the motion on the merits. It did not abuse its discretion by dismissing as untimely his second motion raised in his written memorandum. And it did not abuse its discretion by refusing to order an evidentiary hearing before denying Fellegy's second motion to dismiss on the allegation of selective, discriminatory enforcement. For these reasons, we affirm the conviction.

**Affirmed.**