**STATE of Minnesota, Respondent,**

v.

**Corey Joel EICHERS, Appellant.**

**No. A13–0121.**

Court of Appeals of Minnesota.

Dec. 2, 2013.

214

Lori Swanson, Attorney General, St. Paul, MN; and Janelle P. Kendall, Stearns County Attorney, Carl Ole Tvedten, Assistant County Attorney, St. Cloud, MN, for respondent.

Cathryn Middlebrook, Interim Chief Appellate Public Defender, Bridget K. Sabo, Assistant Public Defender, St. Paul, MN; and Ryan M. Schultz, Benjamen C. Linden, Special Assistant State Public Defenders, Minneapolis, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; HUDSON, Judge; and ROSS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant Corey Eichers challenges his convictions of two first-degree controlled-substance crimes under Minn.Stat. § 152.021, subd. 1(1) (2010). Eichers argues that (1) removal of an airmail package from an airport conveyor belt for the purpose of a narcotics dog sniff constituted a seizure under the United States or Minnesota Constitutions; (2) even if removal of the airmail package from the airport conveyor belt did not constitute a seizure, subjecting the package to a narcotics dog sniff constituted a search that required reasonable, articulable suspicion; (3) the narcotics dog sniff of the airmail package was not supported by reasonable, articulable suspicion; and (4) the search warrant for the contents of the package was void because the affidavit supporting the warrant application recklessly misrepresented a critical fact. We affirm.

## FACTS

Minneapolis—St. Paul International Airport Police Narcotics–Interdiction Officer Mark Meyer has specialized training in drug detection and has been assigned to the Airport Police Narcotics Interdiction Unit since September 1997. He has been an Airport Police Officer since 1990. Officer Meyer works with Brio, a dog that is certified by the United States Police Canine Association to detect cocaine and methamphetamine, among other controlled substances.

While working at a UPS Parcel Sorting Station at the airport in September 2011, Officer Meyer noticed a package traveling on the conveyor belt that was shipped from the UPS Store in Phoenix, Arizona, via "UPS NEXT DAY AIR" to Eichers in Avon, Minnesota. Officer Meyer considered the package suspicious and removed it from the conveyor belt to "take a careful look at the air bill" and "found the following suspicious":

1. The package was shipped from Phoenix, AZ. This is a source city and state for narcotics. 2. Your affiant has found narcotics shipped through UPS from Phoenix many times in the past. 3. The package was sent via [A]ir [S]ervice. Drug couriers use the Air Service because the narcotics will be in the system a shorter time. Air service is very expensive and usually done only by companies. 4. The package appears to be sent from person to person, no company's involved. All of these characteristics are consistent with previous packages that your affiant has found to contain illegal substances.

Because Officer Meyer suspected that the package contained narcotics, he placed it on the floor with 20–25 other packages,

brought Brio into the room, and commanded Brio to "'Seek Dope.'" Brio first sniffed other packages and then went to the suspect package and sat, "giving her indication for the odor of narcotics emitting from th[at] package only." The record is silent on the duration of the dog sniff.

Based on the above information, Officer Meyer obtained a search warrant, executed it, and found that the contents of the package consisted of 225.1 grams of cocaine and 29.6 grams of methamphetamine. An officer repackaged the contents, and Eichers accepted delivery of the package. Law enforcement then arrested Eichers, and respondent State of Minnesota charged Eichers with two counts of first-degree controlled-substance crime.

Eichers moved to suppress evidence of the controlled substances. The district court denied his motion. The court concluded that Officer Meyer "did not have a reasonable, particularized basis to support his impression that the parcel contained contraband." But the court also concluded that, "based upon the minimal expectation of privacy associated with a parcel entrusted to a third party, ... a brief detention [of the package] for closer non-invasive inspection that [did] not deprive the carrier of custody or delay delivery [did] not constitute a seizure and [did not] need [to] be justified by reasonable suspicion" and based in part on the "standard and reasoning of *State v. Kolb*, ... reasonable suspicion was not necessary to justify the dog sniff." Eichers reserved his right to contest the district court's denial of his suppression motion, and the parties stipulated to all facts and proceeded under Minn. R.Crim. P. 26.01, subd. 4.

Based on the stipulated facts, the court found Eichers guilty of both counts of first-degree controlled-substance crime. This appeal follows.

## ISSUES

I.   Did the police officer seize the airmail package under U.S. Const. amend. IV or Minn. Const. art. I, § 10, when he merely removed the package from the airport conveyor belt for a brief visual inspection?

II.   Did the police officer seize the airmail package under U.S. Const. amend. IV or Minn. Const. art. I, § 10, when he prolonged the removal of the package from the conveyor belt for the purpose of subjecting it to a narcotics dog sniff?

III.   Was the narcotics dog sniff of the airmail package a search under U.S. Const. amend. IV or Minn. Const. art. I, § 10, that required reasonable, articulable suspicion that the package contained contraband?

IV.   Did the police officer have reasonable, articulable suspicion that the airmail package contained contraband when he prolonged its removal from the airport conveyor belt and subjected it to a narcotics dog sniff?

V.   Was the search warrant for the contents of the airmail package void because of a material misrepresentation of a fact contained in the affidavit that supported the search-warrant application?

## ANALYSIS

■■   When reviewing pretrial orders concerning the suppression of evidence, an appellate court reviews the district court's legal determinations de novo and its factual findings for clear error. *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012). The United States and Minnesota Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "A defendant's 'rights to challenge any search under Article I, Section 10 of the

Minnesota Constitution are coextensive with [the defendant's] rights under the Fourth Amendment to the United States Constitution.' " *State v. Griffin*, 834 N.W.2d 688, 695–96 (Minn.2013) (quoting *State v. Carter*, 596 N.W.2d 654, 656 (Minn.1999)).

■■■ "We review de novo a district court's ruling on constitutional questions involving searches and seizures." *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007); *see In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn.1997) (noting that standard for reviewing district court's reasonable-suspicion determination for *Terry* stops and probable-cause determination for warrantless searches is de novo). We will not reverse a correct decision by the district court simply because we disagree with its reasoning. *See Kahn v. State*, 289 N.W.2d 737, 745 (Minn.1980) (noting, in a civil case, that the supreme court will not "reverse on appeal a correct decision simply because it is based on incorrect reasons"); *see also State v. Fellegy*, 819 N.W.2d 700, 707 (Minn.App.2012) ("We may affirm the district court on any ground, including one not relied on by the district court."), *review denied* (Minn. Oct. 16, 2012).

■■ "A 'seizure' of [a package possessed by a private freight carrier] occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), *quoted in United States v. Demoss*, 279 F.3d 632, 635 (8th Cir. 2002). A meaningful interference with an individual's possessory interests in the property occurs when an officer asserts "dominion and control over the package and its contents." *Jacobsen*, 466 U.S. at 120, 104 S.Ct. at 1660.

■■ No Minnesota appellate court has squarely addressed the seizure of a mailed package, but the United States Supreme Court has addressed the issue.[1] "The Eighth Circuit also has addressed search-and-seizure issues pertaining to mailed packages.[2] Although not binding on Minnesota state courts, Eighth Circuit caselaw can be persuasive. *See Minn. Twins P'ship v. State*, 592 N.W.2d 847, 854–55 (Minn.1999) (treating federal circuit court interpretation of Supreme Court caselaw as persuasive but not binding), *cert. denied*, 528 U.S. 1013, 120 S.Ct. 517, 145 L.Ed.2d 400 (1999); *State v. McClen-*

---

1. This court discussed the issue in the unpublished opinion of *State v. Lopez*, No. C5–00–161, 2000 WL 1468049, at *12 (Minn.App. Oct. 3, 2000). "Unpublished opinions of the Court of Appeals are not precedential." Minn.Stat. § 480A.08, subd. 3(c) (2010); *see Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n. 3 (Minn.2004) ("[W]e pause here to stress that unpublished opinions of the court of appeals are not precedential.").

2. We do not cite to cases discussing *luggage*, such as *United States v. Va Lerie*, 424 F.3d 694 (8th Cir.2005) (en banc) (7 to 5 decision), *cert. denied*, 548 U.S. 903, 126 S.Ct. 2966, 165 L.Ed.2d 949 (2006), which the district court cited. *See* 4 Wayne R. LaFave, *Search & Seizure* § 9.8(e) (5th ed.2012) (citing *United States v. LaFrance*, 879 F.2d 1, 6 (1st Cir.

1989) (concluding that district court erred when characterizing detention-of-luggage cases and detention-of-package cases as " 'highly analogous' " and stating that "the rules developed for luggage detention cases have somewhat limited applicability in matters, like this one, which involve purely possessory interests" because "detention of a traveler's suitcase not only interferes with his possession of the bag itself, but also impinges on a 'liberty interest in proceeding with his itinerary' " (quoting *United States v. Place*, 462 U.S. 696, 708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983)))). Further, although *United States v. Zacher* is a package case, we do not refer to *Zacher* because the case relies on the analysis in *Va Lerie*. *United States v. Zacher*, 465 F.3d 336, 338 (8th Cir.2006).

*ton*, 781 N.W.2d 181, 191 (Minn.App.2010) ("We recognize that although we are not bound to follow precedent from other states or federal courts, these authorities can be persuasive."), *review denied* (Minn. June 29, 2010), *and cert. denied*, —— U.S. ——, 131 S.Ct. 530, 178 L.Ed.2d 390 (2010).

■■ "When a defendant alleges that a search violated his constitutional rights, we determine whether the search has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Griffin*, 834 N.W.2d at 696 (quotation omitted). Here, Eichers had a reasonable expectation of privacy in his sealed package entrusted to UPS. *See Jacobsen*, 466 U.S. at 114, 104 S.Ct. at 1657 ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy....."); *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282 (1970) ("It has long been held that first-class mail such as letters and sealed packages subject to letter postage ... is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment."); *Ex Parte Jackson*, 96 U.S. 727, 733, —— S.Ct. ——, 24 L.Ed. 877 (1877) ("Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be."); *State v. Barajas*, 817 N.W.2d 204, 215 (Minn.App.2012) (recognizing that constitutional protection extends to "sealed letters or packages in the mail"), *review denied* (Minn. Oct. 16, 2012).

■ We are mindful that, since "9/11," the flying public's expectation of privacy and freedom from intrusion in their persons and belongings has diminished dramatically, and that, perhaps, this diminution in the expectation of privacy and freedom from intrusion is applicable to sealed packages placed in the stream of mail for air delivery. But this court may not overrule Supreme Court precedent or hold that the Minnesota Constitution offers different protection. *See United States v. Hatter*, 532 U.S. 557, 567, 121 S.Ct. 1782, 1790, 149 L.Ed.2d 820 (2001) ("[I]t is this Court's prerogative alone to overrule one of its precedents." (quotation omitted)); *State v. Brist*, 812 N.W.2d 51, 54 (Minn.2012) ("We have therefore recognized that, when we consider matters arising under the United States Constitution, we are bound to apply Supreme Court decisions that are on point and are good law."), *cert. denied*, —— U.S. ——, 133 S.Ct. 36, —— L.Ed.2d —— (2012); *Carter*, 596 N.W.2d at 657 ("[The] state supreme court may interpret its own state constitution ... [and] as the highest court of this state, [is] independently responsible for safeguarding the rights of [its] citizens." (quotations omitted)).

I. **A seizure did not occur under U.S. Const. amend. IV or Minn. Const. art. I, § 10, when the police officer merely removed the airmail package from the airport conveyor belt for a brief visual inspection.**

■ "To comport with Fourth Amendment protections, postal inspectors must possess a reasonable suspicion based on articulable facts that a package contains contraband before they may detain the package for inspection." *United States v. Terriques*, 319 F.3d 1051, 1055 (8th Cir. 2003). The defendant " 'has the burden of establishing that his own Fourth Amend-

ment rights were violated by the challenged search or seizure.'" *Griffin*, 834 N.W.2d at 696 (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978)).

We first address whether Officer Meyer seized the package when he merely removed it from the airport conveyor belt for a brief visual inspection. "Mere handling of a package does not constitute seizure." *Terriques*, 319 F.3d at 1055 (noting that merely lifting the package off the conveyor belt is not meaningful interference because "it takes a matter of seconds ... to evaluate a package" and shipping a package "virtually guarantees" that its external characteristics will be observed, potentially by law enforcement (quotations omitted)). Similarly, a drug-interdiction officer's lifting of a package from a FedEx conveyor belt is not a seizure in the constitutional sense because the officer is not removing the package from the stream of mail. *United States v. Gomez*, 312 F.3d 920, 923 n. 2 (8th Cir.2002) (stating that "there was no seizure until the respective officers exerted dominion and control over the packages by deciding to go beyond a superficial inspection of the exterior of the packages and to detain the packages for further inquiry into characteristics that could not be observed by merely holding the package"); *see Demoss*, 279 F.3d at 636 (stating that "[t]he package was not 'seized' for Fourth Amendment purposes by [officer] lifting it from the conveyor belt"). *But see United States v. Huerta*, 655 F.3d 806, 807–08 (8th Cir.2011) (noting, in a case in which an officer investigated a package while on a mail cart, that "[t]he government conceded that [the officer] seized the package when he removed it from the mail cart").

We conclude that Officer Meyer's mere removal of the airmail package for a brief visual inspection did not constitute a sei-

zure under the federal and state constitutions because the officer's action did not constitute a meaningful interference with any of Eichers's possessory interests in the property.

## II. The officer seized the airmail package when he prolonged its removal from the conveyor belt for the purpose of subjecting it to a narcotics dog sniff.

Eichers argues that, under the United States and Minnesota Constitutions, Officer Meyer's removal of the airmail package from the conveyor belt for the purpose of a narcotics dog sniff was a seizure that required reasonable, articulable suspicion. We agree. *See, e.g., Huerta*, 655 F.3d at 808 ("[A] law enforcement officer may seize a package in the mail for investigative purposes only if he has reasonable suspicion that the package contains contraband.").

We conclude that Officer Meyer seized the airmail package when he prolonged its removal from the conveyor belt for the purpose of subjecting it to a narcotics dog sniff and when he subjected it to a dog sniff because he asserted dominion and control over the package and its contents and meaningfully interfered with Eichers's possessory interests in the package by removing it from the stream of mail. *See Jacobsen*, 466 U.S. at 113, 120, 104 S.Ct. at 1656, 1660; *United States v. Lakoskey*, 462 F.3d 965, 976 (8th Cir.2006) ("On this record, it is clear that the package was seized when it was pulled from the regular stream of mail and subjected to a dog sniff."), *cert. denied*, 549 U.S. 1259, 127 S.Ct. 1388, 167 L.Ed.2d 171 (2007); *United States v. Logan*, 362 F.3d 530, 533 (8th Cir.2004) ("[T]his package was seized for Fourth Amendment purposes when [the officer] detained it and subjected it to a canine sniff."); *United States v. Morones*,

355 F.3d 1108, 1111 (8th Cir.2004) ("[The officer] exercised 'meaningful interference' with Morones's 'possessory interests' in the package—that is, he seized it—when he removed it from the mail stream and held it for the dog sniff."); *United States v. Walker*, 324 F.3d 1032, 1036 (8th Cir. 2003) ("[W]hen [the officer] moved the package to a separate room for a canine sniff, the package was seized for Fourth Amendment purposes."), *cert. denied*, 540 U.S. 898, 124 S.Ct. 247, 157 L.Ed.2d 178 (2003); *Demoss*, 279 F.3d at 636 ("As [officer] moved the package away from the conveyor belt and detained the package for a canine sniff, he exerted dominion and control over the package, that is, the package was seized for Fourth Amendment purposes." (quotation omitted)); *cf. United States v. Vasquez*, 213 F.3d 425, 426 (8th Cir.2000) ("[T]he officers' actions in examining the outside of the [Federal Express] package and then subjecting the package to a dog sniff as it sat at the rear of the delivery truck do not constitute a detention requiring a reasonable, articulable suspicion because, at that point, the officers had not delayed or otherwise interfered with the normal processing of the package.").

### III. The narcotics dog sniff of the airmail package constituted a search under Minn. Const. art. I, § 10, that required reasonable, articulable suspicion.

Eichers had an expectation of privacy in the airmail package. *See Jacobsen*, 466 U.S. at 114, 104 S.Ct. at 1657 ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy...."); *Barajas*, 817 N.W.2d at 215 (citation omitted) (recognizing that constitutional protection extends even to "sealed letters or packages in the mail"). Eichers argues that the narcotics dog sniff was a

search under Minn. Const. art. I, § 10, that required reasonable, articulable suspicion that the package contained contraband. He also argues that the district court's reliance on *State v. Kolb*, 674 N.W.2d 238 (Minn.App.2004), *review denied* (Minn. Apr. 20, 2004), was misplaced and should not affect our analysis because an impounded car is distinct from airmail for investigatory purposes.

In *Kolb*, this court addressed the constitutionality of an officer subjecting the exterior of a lawfully impounded vehicle to a narcotics dog sniff without reasonable, articulable suspicion that the vehicle contained narcotics. 674 N.W.2d at 238–42. We held in *Kolb* that reasonable, articulable suspicion was not necessary for the dog sniff around the exterior of the lawfully impounded vehicle. *Id.* at 239. Relying heavily on *Kolb*, the district court concluded that the dog sniff alone did not require reasonable, articulable suspicion. The district court noted that a parcel that was "voluntarily surrender[ed] ... for handling and shipment by air" lacked any meaningful distinction from a lawfully impounded vehicle. But police are free to perform highly invasive warrantless searches of impounded automobiles. *See State v. Gauster*, 752 N.W.2d 496, 502 (Minn.2008) ("[I]nventory searches are now a well-defined exception to the warrant requirement." (quotation omitted)); *see also South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) ("These [warrantless inventory-search] procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, the protection [of] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." (citations omitted)). None of the needs described by the Supreme Court in

*Opperman* pertain to airmail packages suspected by police to contain narcotics. We agree that the district court's reliance on *Kolb* was misplaced.

We also agree that, under Minn. Const. art. I, § 10, the narcotics dog sniff was a search that required reasonable, articulable suspicion that the package contained contraband. *See State v. Davis,* 732 N.W.2d 173, 175–76 & n. 5 (Minn.2007) (holding that narcotics dog sniff of common hallway outside defendant's apartment was a search that required reasonable, articulable suspicion under Minn. Const. art. I, § 10); *State v. Carter,* 697 N.W.2d 199, 202 (Minn.2005) (holding that narcotics dog sniff outside self-storage unit was a search within the meaning of Minn. Const. art. I, § 10, and required reasonable, articulable suspicion of criminal activity); *State v. Wiegand,* 645 N.W.2d 125, 127–28, 136 (Minn.2002) (holding that narcotics dog sniff around exterior of motor vehicle stopped for routine equipment violation required reasonable, articulable suspicion of drug-related criminal activity under U.S. Const. amend. IV and Minn. Const. art. I, § 10); *State v. Baumann,* 759 N.W.2d 237, 239 (Minn.App.2009) (citing *Davis* and *Carter,* noting that use of narcotics dog sniff in common hallway of apartment building to determine presence of narcotics in apartment unit was a search that required reasonable, articulable suspicion under Minn. Const. art. I, § 10), *review denied* (Minn. Mar. 31, 2009).

We conclude that the narcotics dog sniff was a search that required reasonable, articulable suspicion that the package contained contraband after considering the competing interests of the government to inspect for narcotics and an individual's expectation of privacy and freedom from governmental intrusion. *See Davis,* 732 N.W.2d at 181 ("[T]he government has a significant interest in using narcotics-de-tection dogs in combating drug crimes and ... the public's interest in effective criminal investigations [is] served through the use of this investigative tool." (quotation omitted)); *see also Florida v. Jardines,* — U.S. ——, ——, 133 S.Ct. 1409, 1418, 185 L.Ed.2d 495 (2013) (Kagan, J., concurring) ("[D]rug-detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents so as to convey clear and reliable information to their human partners. They are to the poodle down the street as high-powered binoculars are to a piece of plain glass. Like the binoculars, a drug-detection dog is a specialized device for discovering objects not in plain view (or plain smell)." (citation omitted)); *Carter,* 697 N.W.2d at 211 n. 8 ("We specifically limit our decision to sniffs of drug-detecting dogs. We express no opinion regarding bomb-detection dogs, as to which the special needs of law enforcement might well be significantly greater.").

## IV. The officer had reasonable, articulable suspicion that the airmail package contained contraband when he seized it for the purpose of subjecting it to a narcotics dog sniff and searched it with the assistance of the narcotics dog.

Eichers argues that Officer Meyer lacked reasonable, articulable suspicion that the airmail package contained contraband when Officer Meyer seized it for the purpose of subjecting it to a narcotics dog sniff and searched it with the assistance of the narcotics dog. The district court agreed with Eichers, concluding that Officer Meyer "did not have a reasonable, particularized basis to support his impression that the parcel contained contraband"; that Officer Meyer's "brief detention [of the package] for closer non-invasive inspection ... [did] not deprive the carrier

of custody or delay delivery [and did] not constitute a seizure and need not be justified by reasonable suspicion"; and that "reasonable suspicion was not necessary to justify the dog sniff." We disagree.

We review de novo a district court's determination of reasonable suspicion of illegal activity. *State v. Smith*, 814 N.W.2d 346, 350 (Minn.2012). "[A] law enforcement officer may seize a package in the mail for investigative purposes only if he has reasonable suspicion that the package contains contraband." *Huerta*, 655 F.3d at 808. "Reasonable suspicion must be particularized and based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Smith*, 814 N.W.2d at 352 (quotations omitted). But "[t]he reasonable-suspicion standard is not high" and "is less demanding than the standard for probable cause or a preponderance of the evidence." *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011) (quotations omitted).

To determine whether the suspicion was reasonable, we apply "an objective, totality-of-the-circumstances test" to the articulated and particularized "facts available to the officer at the moment of the seizure." *Smith*, 814 N.W.2d at 351 (quotation omitted). We do not examine each factor individually to determine its appropriate weight; instead, we look at the totality of the circumstances of the case. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) ("[W]e have said repeatedly that [reviewing courts] must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."). And we are mindful that "by virtue of the special training they receive, police officers articulating a reasonable suspicion may make inferences and deductions that might well elude an untrained person." *Smith*, 814 N.W.2d at 352 (quotation omitted). "[W]holly lawful conduct might justify the suspicion that criminal activity is afoot," *State v. Britton*, 604 N.W.2d 84, 89 (Minn. 2000), and "seemingly innocent factors may weigh into the analysis," *Davis*, 732 N.W.2d at 182. But "the reasonableness of the officer's actions is an *objective* inquiry, even if reasonableness is evaluated in light of an officer's training and experience. The actual, subjective beliefs of the officer are not the focus in evaluating reasonableness." *State v. Koppi*, 798 N.W.2d 358, 363 (Minn.2011) (quotation omitted).

Here, the search-warrant application shows that, while working at the UPS Parcel Sorting Station at the airport on September 23, 2011, Officer Meyer thought that the package traveling on the conveyor belt was suspicious because it was shipped from the UPS Store in Phoenix, Arizona, via "UPS NEXT DAY AIR" to Eichers in Avon, Minnesota. He removed the package from the conveyor belt and found various items suspicious, as noted in the search-warrant application and described above. Based on his training and experience, these factors caused Officer Meyer to suspect that the airmail package contained contraband. He therefore placed the package on the floor with 20–25 other packages and subjected it to a narcotics dog sniff.

Other jurisdictions have found that the factors on which Officer Meyer based his suspicion that the airmail package contained contraband are factors that are relevant to whether an officer has reasonable, articulable suspicion to support a constitutional seizure of a mailed package. *See Huerta*, 655 F.3d at 809–10 (source state; shipment from a person); *Lakoskey*, 462 F.3d at 976 (source state); *United States v. Smith*, 383 F.3d 700, 704 (8th Cir.2004)

(source state, air service, overnight delivery); *Logan,* 362 F.3d at 533 (source city); *Demoss,* 279 F.3d at 635–36 (source state; air service; handwritten label, suggesting shipment from a person; priority overnight shipping); *United States v. Dennis,* 115 F.3d 524, 532 (7th Cir.1997) (source city, Express Mail person to person). *But see Vasquez,* 213 F.3d at 426 (concluding that following factors did not support reasonable, articulable suspicion: package was from source state; package was shipped priority overnight mail; package had incorrect address, despite sender and recipient having same last name; package had handwritten air bill, suggesting person-to-person shipping; and package had no shipping account number); *United States v. Johnson,* 171 F.3d 601, 604–05 (8th Cir.1999) (holding following factors to be insufficient to create reasonable suspicion that package contained narcotics when officer failed to explain why facts caused him to have suspicion: source state, package mailed person-to-person at same address, handwritten label, and differing mailing zip code and return zip code).

Here, as in *Logan,* even though each of Officer Meyer's enunciated factors that formed the basis of his suspicion, when considered alone, is consistent with innocent mail use, "[w]hen viewed in the aggregate by a trained law enforcement officer," the factors give rise to the objectively reasonable suspicion needed to justify a seizure and a dog sniff. 362 F.3d at 534. Relying on his training and experience, Officer Meyer explained the relevance of the independently insignificant factors. *See id.; cf. State v. Brennan,* 674 N.W.2d 200, 206 (Minn.App.2004) ("Basing his conclusions on experience, rather than merely making conclusory statements, the affiant provided evidence that contributed to the district court's finding that a fair probability existed...."), *review denied* (Minn.

Apr. 20, 2004). Based on Officer Meyer's substantial training and experience and his articulated reasons for suspecting that the airmail package contained contraband, we conclude that Officer Meyer had reasonable, articulable suspicion that the package contained contraband when he seized it and subjected it to a narcotics dog sniff and his actions therefore were constitutionally permissible.

## V. The search warrant for the airmail package was not void.

Eichers argues that the search warrant for the airmail package was void, alleging that Officer Meyer recklessly misrepresented a critical fact in the affidavit supporting the search-warrant application. We need not reach this issue because Eichers did not raise it in the district court. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996) ("This court generally will not decide issues which were not raised before the district court...."). We nevertheless address Eichers's argument on the merits.

Under *Franks,* "a search warrant is void, and the fruits of the search must be excluded, if the application includes intentional or reckless misrepresentations of fact material to the findings of probable cause." *State v. Andersen,* 784 N.W.2d 320, 327 (Minn.2010) (quotation omitted); *accord Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). We review for clear error findings as to "whether the affiant deliberately made statements that were false or in reckless disregard of the truth." *Andersen,* 784 N.W.2d at 327. We review de novo a conclusion as to whether the error was material. *Id.* "A misrepresentation or omission is material if, when the misrepresentation is set aside or the omis-

sion supplied, probable cause to issue the search warrant no longer exists." *Id.*

■■■ Here, Officer Meyer's error was not material. The affidavit in support of the search-warrant application listed the tracking number of the suspect package four times. The suspect package bore the tracking number of 1Z R32 82W 01 2590 4877. In one of four instances in which the affidavit lists the tracking number, Officer Meyer listed it as 1Z 9VE 461 NT 9155 0555. The error is not material, and Eichers's argument fails on the merits.

## DECISION

The airmail package was not seized under U.S. Const. amend. IV and Minn. Const. art. I, § 10, when Officer Meyer merely removed it from the airport conveyor belt for a brief visual inspection. Under the totality of circumstances, when Officer Meyer seized the package to subject it to a narcotics dog sniff and searched the package with the assistance of the narcotics dog, he had reasonable, articulable suspicion to believe that the package contained contraband. The challenge to the search warrant for contents of the package fails for lack of merit. The district court did not err by denying appellant's motion to suppress the narcotics found in the airmail package.

**Affirmed.**

ROSS, Judge (concurring specially).
[W]hile the Constitution protects against invasions of individual rights, it is not a suicide pact.
*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 160, 83 S.Ct. 554, 563, 9 L.Ed.2d 644 (1963).

One way to know you've misapplied constitutional safeguards is to recognize that the only people who benefit are drug dealers and maybe terrorists; no one else would care or even know that a police officer briefly repositioned their air-transported packages and allowed a police dog to sniff them.

The majority and dissenting opinions agree on a constitutional holding that, in my view, is wrong and dangerously so. I agree with the opinion of the court today that, if he needed it, Officer Meyer had reasonable articulable suspicion to administer the dog sniff of Eichers's package. So we rightly affirm, and I will not add anything to the majority's well-written exposition on that issue. But I write separately because I respectfully, but strongly, disagree with two positions shared between the majority and dissenting opinions: the first is that the federal Constitution required Officer Meyer to have reasonable suspicion that the package contained an illegal substance before he lowered the package to the floor for the dog sniff; and the second is that the state constitution required him to have reasonable suspicion before he subjected the package to the sniff.

Let me preface my constitutional view about the dog sniff by disclosing what I assume, and what I think is commonly assumed, about modern air-delivery processes. This will reveal my perspective about *reasonable* expectations as to both handling (the seizure issue) and privacy (the search issue) for those who send their packages by air couriers like Federal Express, United Parcel Service, and the United States Postal Service. I assume that any package I send or receive by air will be handled by a dozen people or more. I suppose it will be lifted, tossed, slid, flipped, lowered, and dropped. I suppose that it will be placed in bins, on shelves, in carts, on floors, through chutes, in trucks, on conveyor belts, on dollies, and in cargo holds. I suppose that its weight distribution, its balance, its markings, its density,

its feel, its packaging, and its smell will be scrutinized by someone, some animal, or some instrument, possibly even an x-ray device like the one I surrender my carry-on baggage to before officials will allow me to take it onto an airplane. I suppose that it will be closely examined in every conceivable way to discern whether it is safe to put it into an airplane operated by people whose lives depend on it not blowing up. Or into the hands of a delivery person whose safety depends on there being no anthrax or ricin or C–4 inside. I suppose all of this because Ted Kaczynski, al-Qaeda, and others have demonstrated that some people will use airplanes to kill and because I know others are trying to stop them. And again, as the backdrop to my disagreement with my two fellow panel members, I suppose that these assumptions are universally held by reasonable people.

**The Officer Did Not "Seize" the Package by Moving it for the Dog Sniff.**

I do not believe that Officer Meyer's moving the package from the conveyor belt to the floor for the purpose of walking his drug-detecting dog nearby constitutes a "seizure" under the Fourth Amendment. The majority correctly explains that, under United States Supreme Court precedent, a package being processed by a courier is "seized" when an officer intervenes and engages in "meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). The majority also correctly recognizes that no U.S. Supreme Court case has ever decided whether a seizure occurs the moment an airport police officer briefly places an air-delivered package aside to subject it to a dog sniff. Likewise, neither our state supreme court nor this court has ever decided the question. That question is therefore open in Minnesota.

The majority accurately cites several Eighth Circuit Court of Appeals decisions holding that an officer's moving a package for a dog sniff constitutes a seizure. Influenced by these federal appellate decisions, which are not binding on this court, the majority similarly holds that Officer Meyer "remov[ed the package] from the stream of mail" and "asserted dominion and control over the package and its contents and meaningfully interfered with Eichers's possessory interests." The majority's holding mirrors those federal court of appeals cases cited as support, but I think the federally repeated holding is wrong and that we should not follow it for three reasons. First, I doubt that the Eighth Circuit would render the same holding today, so the cases cited should not influence our thinking. Second, under more recent Eighth Circuit reasoning, the prior holding is wrong, exaggerating an air-delivery recipient's possessory interest. And third, I think U.S. Supreme Court precedent renders unsustainable the notion that an officer's brief placement of a package for a dog sniff removes the package "from the stream of the mail," "meaningfully interferes" with its owner's possessory interest, exhibits "dominion and control" over the package, or otherwise constitutes a "seizure."

I doubt that the Eighth Circuit would today decide the cases relied on by the majority in the same way it did from 2002 to September 2006. All of the majority's cited cases expressly addressing the issue were decided before the Eighth Circuit's opinion in *United States v. Zacher*, 465 F.3d 336 (8th Cir.2006). *Zacher* looks a lot like this case, and it is the only one in which the Eighth Circuit analyzes how an officer's briefly setting a package aside in a courier's facility relates to the real issue of meaningful interference in the owner's

possessory interest. In *Zacher*, a FedEx employee summoned Bismarck police to the FedEx facility to examine a package being sent by a vendor whose frequency of mailings sparked the employee's suspicions. 465 F.3d at 337. The employee handed the package to a detective, who took it and "placed it on the floor with several others" so that his drug-detecting dog could smell it. *Id.* The dog alerted to the package, indicating illegal drugs. *Id.* Except for the direct involvement by the courier's employee, these facts are materially identical to ours.

The *Zacher* court relied on a recent opinion of the entire Eighth Circuit, *United States v. Va Lerie*, 424 F.3d 694 (8th Cir.2005) (en banc), and held that no constitutionally significant event occurred when the officer took the package and placed it on the floor of the FedEx facility to subject it to the dog sniff. *Zacher*, 465 F.3d at 338–39. The court reasoned that the officer's behavior did not result in any meaningful interference with the recipient's limited possessory interest in the shipped package because the police activity before the dog's alert was too brief to have delayed the package's timely delivery. *See id.* The officer's handling of the package in placing it on the floor was similarly constitutionally insignificant "since a reasonable person could expect FedEx to handle his or her package the same way." *Id.* at 339.

*Zacher* effectively and reasonably closed the door on the line of errant cases (cases the majority relies on today), by implicitly following the lucid reasoning of the concurring opinion in the first of those cases, *United States v. Demoss*, 279 F.3d 632 (8th Cir.2002). Reflecting more than a decade ago on an almost identical situation, which, coincidentally, happens also to have involved the actions of the same Minneapolis–St. Paul Airport police officer

whose conduct is under scrutiny today, Judge Hansen believed that the package recipient maintained "no possessory interest in having his package routed on a particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin for a particular amount of time." *Id.* at 639 (Hansen, J., concurring). He was sure that no seizure had occurred. *Id.* Now that the Eighth Circuit's decision in *Zacher* has effectively adopted exactly that reasoning, our court should borrow Judge Hansen's language as it bears on Eichers's limited possessory interest in the package from the short time Officer Meyer saw it until his dog alerted on it:

> His only possessory interest in the package was timely delivery, and until Officer Meyer's actions impinged upon that interest, there was no seizure. Officer Meyer's action in merely lifting this parcel off a conveyor belt and setting it aside for a brief inspection that would not have otherwise interfered with timely delivery (but for the positive alert from the narcotics dog) impinged upon no cognizable Fourth Amendment interest.

*Id.* The Ninth Circuit has relied on both Judge Hansen's concurring opinion in *Demoss* and the Eighth Circuit's later opinion in *Zacher*, holding that an officer's "ten minute detention of … [a] package in the FedEx hold room without reasonable suspicion does not implicate [the appellant's] Fourth Amendment rights" because "no seizure occurs if a package is detained in a manner that does not significantly interfere with its timely delivery in the normal course of business." *United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1160, 1162 (9th Cir.2007). To the extent we choose to be influenced by the Eighth Circuit's interpretation of the Constitution, we should be influenced by *Zacher*, not the earlier caselaw. And so influenced, I disagree with the majority that the officer's

moving the package to the floor for a dog sniff constitutes a seizure under the Fourth Amendment.

But of course we are not *bound* to follow the Eighth Circuit's newer analysis in *Zacher*. And the majority seems persuaded that the earlier cases are more reasonable than *Zacher* so that we should still follow them even if they no longer bind federal district courts in the Eighth Circuit. I therefore emphasize that, in addition to their being impliedly overruled by *Zacher*, I also think the Eighth Circuit's pre-*Zacher* decisions are wrong on the question of seizure. This is because they exaggerate a person's possessory interest in packages surrendered for air delivery. They do so by implicitly focusing on the officer's subjective intent to conduct a dog sniff rather than on the possessor's limited interest in the handling of the package and on any meaningful—as in *real*—interference with that interest.

The first case was *Demoss*. The *Demoss* majority held that "[a]s Meyer moved the package away from the conveyor belt and detained the package for a canine sniff, he exerted dominion and control over the package, that is, the package was seized for Fourth Amendment purposes." 279 F.3d at 636 (internal quotation omitted). That conclusion is the extent of the *Demoss* majority's analysis. It did not attempt to explain how the officer's conduct met the Supreme Court's standard for a seizure—a *meaningful interference* with the person's possessory interest.

The next case cited by the majority today after *Demoss* is *United States v. Walker*, 324 F.3d 1032 (8th Cir.2003). In *Walker*, a California postal inspector marked a suspicious package being sent from Los Angeles to St. Paul and alerted a St. Paul postal inspector that it was en route. 324 F.3d at 1035. The St. Paul inspector pulled the package aside for a drug-dog sniff, which indicated drugs and led to the addressee's arrest. *Id.* at 1035–36. In a single-sentence assessment, with no analysis of how the inspector's conduct in moving the package aside for the dog sniff constituted any meaningful interference with the addressee's possessory interest, the *Walker* court cited *Demoss* and echoed simply, "It is clear under our precedent that when [the St. Paul inspector] moved the package to a separate room for a canine sniff, the package was seized for Fourth Amendment purposes." *Id.* at 1036.

The Eighth Circuit then decided *United States v. Morones*, 355 F.3d 1108 (2004). *Morones* involved an officer randomly inspecting parcels at the FedEx facility in Rialto, California. *Id.* at 1110. The officer noticed a priority package addressed to a recipient in Dubuque, Iowa. *Id.* He set the package aside and retrieved his drug-sniffing dog from his car. *Id.* The dog alerted to the package, leading to a warrant, a search, and an arrest in Iowa. *Id.* Without explaining how, the *Morones* court held only that "[the officer] exercised 'meaningful interference' with Morones's 'possessory interests' in the package—that is, he seized it—when he removed it from the mail stream and held it for the dog sniff." *Id.* at 1111.

The other two relevant Eighth Circuit decisions cited by the majority—*Logan* and *Lakoskey*—likewise reach cursory seizure conclusions, with no analysis as to how momentarily repositioning a package at a courier's facility to conduct a dog sniff meaningfully interferes with the recipient's or sender's possessory interest. *See United States v. Logan*, 362 F.3d 530, 533 (8th Cir.2004) (citing *Walker* and *Morones* and stating only, "[u]nder our existing precedent it is clear this package was seized for Fourth Amendment purposes when Detective Flynn detained it and subjected it to a

canine sniff"); *United States v. Lakoskey,* 462 F.3d 965, 976 (8th Cir.2006) (citing *Logan* and stating, "[o]n this record, it is clear that the package was seized when it was pulled from the regular stream of mail and subjected to a dog sniff"). One month after *Lakoskey,* the Eighth Circuit decided *Zacher.*

Regardless of whether *Zacher* and *Va Lerie* reflect an ongoing conflict with the *Demoss* line of cases in the Eighth Circuit or they overrule them, the result is the same: we have no reason to rely on the repeated but unexplained "seizure" holding in the *Demoss* line. And in substance, unlike those cases, *Zacher* actually applies the Supreme Court's meaningful-interference standard.

Applying *Zacher's* reasoning here, I am sure that Officer Meyer's brief placement of the package onto the UPS floor for a dog sniff could not have interfered with Eichers's possessory interest in the package. Indeed, had the police report not documented that the officer picked up the package and put it onto the floor, Eichers probably would have never known. Nothing in the record suggests that the officer's momentary repositioning would have affected the timing of the package's ultimate delivery or even its reaching any significant transfer point along the way. And as my preamble suggests, I think every reasonable person sending or awaiting an air-delivery package expects that it will be handled similarly, many times over by many handlers. The officer's handling did not interfere with Eichers's possessory interest in any way, let alone any meaningful way, so no seizure occurred.

United States Supreme Court caselaw also influences my view that no Fourth Amendment seizure occurred here. The pre-*Zacher* Eighth Circuit cases, which seem errant for the reasons stated, all mention the dog sniff in the same sentence

that declares that the officer's conduct constitutes a seizure. That is, they imply that the officer's reason for moving the package is what matters. But that is incorrect. An officer's reason for lifting the package has no practical bearing on the real issue in a seizure analysis within the Supreme Court's framing of the question. Again, according to the Supreme Court, the question is whether the officer's handling of the package meaningfully interfered with the recipient's or sender's possessory interest. *Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656. The officer's *purpose* is not relevant to the owner's possessory interest until the officer actually *does* something to impact that interest.

And *Jacobsen* informs us of the type of intrusive police conduct that might rise to this "seizure" level of interference with an air-shipped package. The majority relies on *Jacobsen* for the notion that Officer Meyer's merely placing a package on the floor for a dog sniff constituted a "seizure." Far from it. In *Jacobsen,* the officers investigating a package did not merely put the package on the floor. They "removed [a] tube from the box, the plastic bags from the tube, and a trace of powder from the innermost bag." 466 U.S. at 118, 104 S.Ct. at 1659, 80 L.Ed.2d 85. Because these contents had already been revealed to courier employees who discovered them after a forklift accident had opened the package, *id.* at 111, 104 S.Ct. at 1655, 80 L.Ed.2d 85, the agents' conduct revealed nothing that had not been previously learned by the "private search" of the courier employees and was not a "search" under the Fourth Amendment, *id.* at 119–20, 104 S.Ct. at 1659–60, 80 L.Ed.2d 85. But it was a clear demonstration of "the agents' assertion of dominion and control over the package *and its contents,*" and it was therefore a "seizure." *Id.* at 120, 104 S.Ct. at 1660, 80 L.Ed.2d 85 (emphasis

added). *Jacobsen* does not resemble this case. And it does not hold or even suggest that placing a package on the floor to be sniffed is a "seizure." But it does support my reasoning that a "seizure" results from some *real* interference with a person's possessory interest in a package while in transit.

Supreme Court caselaw urges me to disagree with the majority and dissent in another way. The majority rightly observes that the officer's mere lifting of the package from the conveyor belt with the intent to examine it is not a seizure. *See Demoss*, 279 F.3d at 636. And the Supreme Court has held that the Fourth Amendment does not require reasonable suspicion to justify a drug-detection dog sniff of a vehicle stopped by police, *Illinois v. Caballes*, 543 U.S. 405, 410, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005), or of luggage handled by a traveler in an airport, *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983). So if the Fourth Amendment requires reasonable suspicion for neither the officer's *lifting* of a package from a conveyor belt for an initial viewing nor the dog's *sniffing* of the package placed in front of it, how does it require reasonable suspicion for the officer's merely lowering of the package to the floor between the lifting and the sniffing? In what logical way has the officer's repositioning of the package for the sniff become more constitutionally significant than the original lifting or the eventual sniffing? Shouldn't the Constitution as applied to each component make sense in context of its application to the others?

For these reasons I am convinced that the officer's placing the package on the floor for the dog sniff was not a "seizure" under the Fourth Amendment. It is of no constitutional importance and required no suspicion whatsoever.

**The Officer Did Not "Search" the Package by Subjecting it to the Dog Sniff.**

I turn from the supposed seizure to the supposed search. For two reasons I disagree with the majority's treatment of the dog sniff as a search under the state constitution. First, the holding mistakenly extends constitutional protection to afford greater rights under the state constitution than is afforded under the same language of the federal Constitution, while authority to so extend the law is reserved exclusively for the state's highest court. Second, even if the holding is only an attempted application of existing state supreme court precedent, the application is erroneous because the reasons the supreme court treated dog sniffs of occupiable structures as searches do not apply to dog sniffs of packages surrendered temporarily to air-delivery couriers.

Any state may provide greater protection of individual rights under its constitution than the protection afforded by the federal Constitution. *See Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983). But in Minnesota, authority to do so lies with the supreme court, not this court. *See State v. Carter*, 596 N.W.2d 654, 657 (Minn.1999) ("[A] state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution." (quotation omitted)); *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990) (criticizing the court of appeals for "exceeding its role as an error-correcting body"). So an individual's Fourth Amendment right to privacy in a package being shipped by air affords the full extent of constitutional protection in Minnesota unless the state supreme court has determined that the Minnesota constitutional right to privacy is greater. It hasn't.

It is clear that the sniff is not a search under the Fourth Amendment. The federal Supreme Court has expressly held that an officer's exposing an airline passenger's luggage to a dog sniff for drugs "did not constitute a 'search' within the meaning of the Fourth Amendment." *Place*, 462 U.S. at 707, 103 S.Ct. at 2645. The Supreme Court's rationale for that holding as to luggage would apply equally to a package sniffed during shipping: a dog sniff is not intrusive; it does not reveal noncontraband items; the sniff discloses only the presence or absence of illegal drugs; the sniff exposes the owner to no embarrassment or inconvenience. *See id.*, 103 S.Ct. at 2644. Packages transported by air have never been held to have greater constitutional protection than luggage transported by air. The dog sniff of Eichers's package therefore was not a search under the federal Constitution.

The same is presumptively so under the state constitution. No state supreme court case has ever taken a different approach or held that a dog sniff is always a "search" under our state constitution. A dog sniff has been held to be a search only in limited circumstances not present here. In *State v. Wiegand*, the supreme court held that the state constitution requires an officer to have reasonable suspicion to conduct a dog sniff outside a car lawfully stopped for an equipment violation because a dog sniff for drugs expands the scope of the stop, and expanding the scope of a traffic stop requires reasonable suspicion. 645 N.W.2d 125, 135–36 (Minn.2002). In *State v. Carter*, the state supreme court held that a drug-detection dog sniff outside a storage unit is a "search" under the state constitution "particularly" for "storage units like appellant's that are equivalent in size to a garage and are large enough to contain a significant number of personal items and even to conduct some personal activities." 697 N.W.2d 199, 210–11 (Minn.

2005). And in *State v. Davis*, the state supreme court accepted without discussion the state's concession that a drug-detection dog sniff in an apartment building's common hallway is a search under the state constitution, and it went on to analyze the level of suspicion necessary to justify the search based on a person's expectations of privacy in the space immediately outside of his residence. 732 N.W.2d 173, 176, 180–81 (Minn.2007).

Nothing in these cases suggests that the supreme court has exercised its exclusive authority to interpret the state constitution so as to extend to air-courier customers greater individual rights to privacy in shipped packages than those rights afforded by the federal Constitution. The state holdings lack sweeping language or broad reasoning treating drug-detection dog sniffs the same regardless of the subject or circumstances of the sniff. Indeed, the rationale applies to the limited circumstances in those cases: reasonable suspicion is required for dog sniffs around stopped cars because of the expand-the-scope-of-the-stop doctrine; for dog sniffs immediately outside garage-sized storage units in part because the units are large enough to accommodate personal activity; and for dog sniffs just outside a tenant's apartment door because the sniff reveals personal activity inside a person's home. Because the supreme court has never interpreted the state constitution to give air-courier customers greater individual rights than rights afforded by the federal Constitution, in my view the court today exceeds its authority by holding that the state constitution requires reasonable suspicion for police conduct that is unrestricted by the Fourth Amendment.

Assuming for the sake of argument that I am wrong about that, and that the majority is trying only to apply precedent rather than to extend it, still I differ. A

dog sniff is a "search" of or around a package during shipment only if a person could have a reasonable expectation of privacy in the area searched. *Caballes*, 543 U.S. at 408–09, 125 S.Ct. at 837–38. Harken back to my preamble. Reasonable people live in a security-conscious world that has seen new methods and technology emerge to respond to Ted Kaczynski's use of air transportation to send explosive devices, unknown operatives' use of air transportation to send anthrax and ricin, and al-Qaeda's various reported plots to smuggle improvised bombs onto both cargo planes and passenger planes. Today, who could reasonably think that his package is going to be put onto an airplane without substantial human, animal, and technological scrutiny of its contents? Knowing that his package, like all air-shipped packages, would, without any showing of particularized suspicion, likely undergo extensive examination before being placed on an airplane, how could Eichers have had any *reasonable* expectation of privacy in the scent-detecting examination of the package after it was removed from the airplane and subjected to the dog sniff for drugs? The majority acknowledges that, because of modern terrorism, the flying public's expectation of privacy in packages placed in the mail is, "perhaps," diminished. But it believes that the state supreme court has already drawn the line on constitutional protections in this setting. Again, I read the state cases quite differently.

Finally, even if I am wrong and the sniff constitutes a warrantless "search," we still must determine what, if any, level of suspicion is necessary for the search. Balanced against Eichers's reasonable expectation of privacy in the detectable drug odor emanating from his package, which I submit is an interest of very little value, is the substantial governmental interest in fostering human safety. The constitutional question of reasonableness includes a balancing of

these interests. *See Wiegand*, 645 N.W.2d at 134. Air courier services like UPS occasionally partner with law enforcement officials to reduce the chances that their deliverers will become unwitting drug runners who might be greeted by illegal drug users or dealers or by other criminal elements attempting to intercept interstate drug shipments. Law enforcement partnerships that allow officers like Meyer to help couriers screen packages for drugs using suspicionless dog sniffing plainly vindicate the state's substantial safety interest without offending *any* legitimate individual interest.

### Conclusion

This is not a close case. Eichers had no reasonable expectation of privacy in the odor immediately around a package shipped by air. The federal Constitution does not treat the officer's conduct as a seizure or the dog sniff as a search. The state supreme court has never treated the dog sniff of an air-transported package as a search or suggested that it would. A drug-detecting dog sniff is a minor intrusion, revealing only the presence of illegal contents. The state has a substantial interest in helping air couriers avoid dangerous drug deliveries.

This was not a seizure. This was not a search. Even if it were a search, the slight intrusion required no particularized suspicion. Officer Meyer had reasonable suspicion to conduct the dog sniff, but neither the U.S. nor Minnesota Constitution required it.

HUDSON, Judge (dissenting).

Because the strongest advocates of Fourth Amendment rights are frequently criminals, it is easy to forget that our interpretations of such rights apply to the innocent and the guilty alike.

*United States v. Sokolow,* 490 U.S. 1, 11, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (Marshall, J., dissenting).

Because Officer Meyer did not have reasonable articulable suspicion for the dog sniff search of Eichers's package, I respectfully dissent. It is well established that the reasonable suspicion standard is "not high." *State v. Diede,* 795 N.W.2d 836, 843 (Minn.2011); *State v. Davis,* 732 N.W.2d 173, 182 (Minn.2007) (citing *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997)). But I respectfully submit that police officers must at least be able to trip over it, or it is no standard at all.

Reasonable articulable suspicion requires that police officers point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). We are "deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *State v. Britton,* 604 N.W.2d 84, 88–89 (Minn.2000) (citation omitted). "Nonetheless, the reasonableness of the officer's actions is an *objective* inquiry, even if reasonableness is evaluated in light of an officer's training and experience." *State v. Koppi,* 798 N.W.2d 358, 363 (Minn.2011) (quotation and citation omitted). Thus, "[a] hunch, without additional objectively articulable facts, cannot provide the basis for an investigatory stop." *Diede,* 795 N.W.2d at 843. Significantly, the stated justification must be distinguishable from the "activities of any multitude of innocent persons." *State v. Harris,* 590 N.W.2d 90, 100–01 (Minn. 1999); *United States v. O'Neal,* 17 F.3d 239, 242 (8th Cir.1994) (quoting *United States v. Crawford,* 891 F.2d 680, 681 (8th Cir.1989) (holding that "conduct typical of

a broad category of innocent people provides a weak basis for suspicion")).

Here, Officer Meyer relied on three primary factors for subjecting Eichers's package to a dog sniff search: (1) the package was sent via next day air mail; (2) person-to-person; (3) from Phoenix, Arizona. But each of these factors describes a broad category of innocent conduct and therefore Officer Meyer lacked reasonable articulable suspicion for the dog sniff search.

**Next day air mail; sent person-to-person**

In his application for a search warrant, Officer Meyer testified that next-day person-to-person air mail is suspicious because individuals (as opposed to businesses) cannot generally afford next-day air mail and because drug couriers prefer to use air mail so that the narcotics are in the system a shorter period of time. Meyer's premise stands on a weak foundation. As appellant notes, air mail *is* more expensive than shipping by ground transportation—approximately $60 to ship a one-pound package by air, versus approximately $10 by four-day ground, according to the United States Postal Service—but this is hardly prohibitive for most individuals. And as appellant's counsel stated at oral argument, if Grandma forgot to send her grandson's birthday gift until the day before his birthday, she might be very willing to pay $60 for next-day air service to ensure timely delivery. Indeed, one can envision any number of innocent circumstances in which individuals might use next-day air irrespective of the cost, including sending perishable goods or fragile items. Thus, Officer Meyer's reliance on this factor to establish reasonable suspicion is faulty as it encompasses a broad range of innocent behavior.

**The package was sent from Phoenix, Arizona**

In his search warrant application, Officer Meyer stated that the package was

suspicious because it was shipped from Phoenix, Arizona, "a source city and state for narcotics." But the mere fact that a package is addressed from Phoenix or any other border state is insufficient to constitute reasonable articulable suspicion, especially in this day and age when methamphetamine is easily manufactured in garages across America. Moreover, while a *destination address* is part of the United States Postal Services' drug package profile, *see United States v. Lux,* 905 F.2d 1379, 1380 n. 1 (10th Cir.1990), the source city and state is noticeably absent.[3] Instead, the drug package profile has looked to six factors: "(1) size and shape of the package; (2) package taped to close or seal all openings; (3) handwritten or printed labels; (4) unusual return name and address; (5) unusual odors coming from the package; (6) fictitious return address; and (7) destination of the package." *Id.* As the district court noted, "[n]one of the other factors discussed in *Lopez* and the 'drug package profile' cases it cites, i.e. heavy taping, handwritten labels, return address discrepancy, reliable information that a drug shipment was en route, or payment of the shipping charges in cash, are present in this case." Indeed, this case is virtually indistinguishable from *United States v. Vasquez,* 213 F.3d 425, 426 (8th Cir.2000), where the court concluded that the following factors were insufficient to create reasonable articulable suspicion: *package was from a source state; package was shipped priority overnight mail;* package had incorrect address, despite sender and recipient having same last name; package had handwritten air bill, *suggesting person-to-person shipping;* and package had no shipping account number. Many of these same factors, including shipping from a source state, were also held to be insufficient to create reasonable suspicion in *United States v. Johnson,* 171 F.3d 601, 604 (8th Cir.1999).

As a trained police officer, Officer Meyer could make inferences and deductions that might elude an untrained person. But in my view, on this record, Officer Meyer's findings amounted to a mere "hunch." Thus, the district court was spot on when it noted that "Officer Meyer's test for subjecting this particular parcel to a dog sniff would presumably be met by any package shipped person to person from a border state, coastal state or urban location by air service or some other expedited delivery method." Even considering Officer Meyer's experience, these bare facts are not enough to constitute reasonable articulable suspicion. Such random seizures are an anathema to our citizens' fundamental right under the United States Constitution and the Minnesota Constitution to be "secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Minn. Const. art. I, § 10. Accordingly, I would hold that the district court's finding that Officer Meyer did not have reasonable articulable suspicion to subject Eichers's package to a dog sniff search was correct. Because the Minnesota Constitution requires reasonable suspicion, I would suppress the evidence obtained from the unconstitutional search and reverse Eichers's conviction.

---

3. That said, courts have on occasion relied on this factor—at least in part—including this court in our unpublished decision in *State v. Lopez,* No. C5–00–161, 2000 WL 1468049, at *2 (Minn.App. Oct. 3, 2000). Notably, however, the *Lopez* court favorably cited the drug package profile set forth in *Lux. See Lopez,* 2000 WL 1468049, at *2.